**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AIMEE NIBAGWIRE,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 04-2254

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A97-209-211)

Argued: October 26, 2005

Decided: June 13, 2006

Before LUTTIG,[1] MICHAEL, and GREGORY, Circuit Judges.

---

Petition for review granted; agency order and decision vacated and
remanded by published opinion. Judge Michael wrote the opinion, in
which Judge Gregory joined.

---

**COUNSEL**

**ARGUED:** Joseph M. Kum, AMOROW & KUM, P.A., Takoma
Park, Maryland, for Petitioner. Song E. Park, UNITED STATES

---

[1]Judge Luttig heard oral argument in this case but resigned from the
court prior to the time the decision was filed. The decision is filed by a
quorum of the panel pursuant to 28 U.S.C. § 46(d).

DEPARTMENT OF JUSTICE, Office of Immigration Litigation, Civil Division, Washington, D.C., for Respondent. **ON BRIEF:** Peter D. Keisler, Assistant Attorney General, Civil Division, Michelle E. Gorden, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

MICHAEL, Circuit Judge:

When the Department of Homeland Security (DHS) serves an alien with notice of a removal hearing by regular mail, as allowed by current law, the agency is entitled to a presumption of effective delivery. A removal order was entered against Aimee Nibagwire after she did not appear at her hearing. She then moved to reopen the proceedings, asserting that she did not receive the notice to appear sent by regular mail. In affirming the immigration judge's denial of Nibagwire's motion, the Board of Immigration Appeals (BIA) erred by applying the delivery presumption for certified mail, the mail delivery method required by a prior statute. The BIA further erred by holding Nibagwire to the evidentiary standard for rebutting the delivery presumption for certified mail. Because the BIA applied the wrong presumption and rebuttal standard, we vacate the order denying Nibagwire's motion to reopen and remand for further proceedings.

I.

Nibagwire is a citizen of Rwanda and a native of the Democratic Republic of Congo. On January 4, 2003, she entered the United States on a J-1 non-immigrant visa, which authorized her to stay in this country until June 1, 2003. Nibagwire remained here past this date and on June 23, 2003, filed an application for asylum with the DHS asylum office in Arlington, Virginia. At the time of her application she was living with two friends, Vianney Rurangwa and Kayinamura Robert, in an apartment in Adelphi, Maryland. Nibagwire therefore listed her address with DHS as follows: "c/o Vianney Rurangwa, 1836 Metzerott Road, Apt. No. T15, Adelphi, Maryland 20783." J.A. 20.

On July 16, 2003, Nibagwire went to the Arlington asylum office for a scheduled interview with an asylum officer. After the interview she was instructed to return at 1:00 p.m. on July 30 to "pick up [the] decision" on her application. J.A. 21. According to Nibagwire, she appeared on July 30 as instructed, but was told that a decision had not yet been rendered and that it would be mailed to her. As it turned out, the asylum office had denied Nibagwire's application on July 18, 2003. This denial occurred twelve days before her visit to that office on July 30, the day the agency had designated for her to "appear in person" and "receive the Asylum Officer's decision." J.A. 21. The record contains nothing to explain why the asylum office was unable on July 30 to advise Nibagwire of its earlier July 18 decision to deny asylum. In any event, on July 18, 2003, DHS issued a notice to appear, charging Nibagwire with removability and ordering her to appear for a hearing before an immigration judge (IJ) in Baltimore on October 1, 2003.

A certificate of service attached to the notice to appear stated that it was served on Nibagwire by regular mail. The date stamp on the joint appendix copy of the certificate is practically illegible. The copy in the administrative record is not much better, but indicates a mailing date in a month that begins with the letters "JU." *See* Certified Administrative Record at 130, *Nibagwire v. Gonzales*, No. 04-2254 (4th Cir. filed Nov. 8, 2004). These letters appear to signify part of the abbreviation for July because the notice to appear was issued on July 18. The day of the month is unreadable, and the year appears to be 2003. Nibagwire's Adelphi, Maryland, address is listed on the notice, but it omits the line "c/o Vianney Rurangwa" that Nibagwire included in her asylum application.

Nibagwire did not appear at her scheduled removal hearing on October 1, 2003. The IJ conducted the hearing *in absentia*, as permitted by 8 U.S.C. § 1229a(b)(5)(A), and issued an order for Nibagwire's removal. The order was mailed to Nibagwire at the Adelphi, Maryland, address and delivered there on October 2, 2003. The address on the envelope did not contain the line "c/o Vianney Rurangwa."

On October 14, 2003, Nibagwire filed a motion to reopen her removal proceedings on the ground that she did not receive notice of

the hearing. In her supporting affidavit Nibagwire offered the following account. She did not receive any mail from the DHS at her Adelphi, Maryland, address between July 30, 2003, when she was told that a decision would be mailed to her, and September 29, 2003. She bases this assertion on the fact that she was present at the Adelphi address "most of the time" (she was unemployed). J.A. 18. She inquired of the two friends with whom she was residing at this address, and they told her they had not received mail addressed to her. Nibagwire moved to Silver Spring, Maryland, on September 29, 2003, but she "did not change [her] address with [the DHS] because [she] did not know how long [she] would be at the new address and [her] former address was the permanent home of close friends." *Id.* She learned of the *in absentia* removal order on October 2, 2003, after Vianney Rurangwa, one of her friends at the Adelphi address, called and told her that a letter had arrived for her from the Department of Justice. The next day, Nibagwire called the immigration court "to ask how a decision could be made in [her] case" when she had not been sent a notice to appear. J.A. 19.

The IJ denied Nibagwire's motion to reopen on October 15, 2003. "With no apparent return of the notice to appear to the [DHS], there is a presumption it was delivered," the IJ said. J.A. 13-14. The IJ also noted that Nibagwire had moved in September 2003 without notifying the immigration court or the DHS. The IJ concluded that there were "no exceptional circumstances for the failure to appear." J.A. 14. The BIA adopted and affirmed the IJ's decision. In affirming, the BIA relied exclusively on *In re Grijalva*, 21 I. & N. Dec. 27 (BIA 1995), a case that (1) adopted a "strong presumption" of delivery for certified mail and (2) prescribed an evidentiary standard for rebutting the delivery presumption for certified mail.

Nibagwire filed a petition for review in this court. We review the denial of a motion to reopen removal proceedings for abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 323 (1992).

## II.

An order of removal entered *in absentia* may be rescinded "upon a motion to reopen . . . if the alien demonstrates that [she] did not receive notice" of the hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). Since

1996 the DHS has been authorized to serve notice of a removal hearing upon an alien by regular mail. *See* 8 U.S.C. § 1229(a)(1). When this (regular mail) method of service is used, as it was in Nibagwire's case, the agency is entitled to a presumption of effective delivery. *See Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1137 n.6 (4th Cir. 1984). The delivery presumption is based on common experience that "[m]ost letters are delivered, but some aren't." *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004).

Nibagwire contends that the BIA abused its discretion in her case by relying on *Grijalva*, which dealt with certified mail and applied a strong presumption of delivery. We agree with Nibagwire. *Grijalva* is out of date because the controlling statute now allows service by regular mail.

When the BIA decided *Grijalva* in 1995, the statute required that notice served by mail be sent by certified mail. Immigration Act of 1990, Pub. L. No. 101-649, § 545(a), 104 Stat. 4978, 5062 (1991) (amended 1996). Under a service by certified mail scheme, *Grijalva* held that a "strong presumption" of delivery attaches. *Grijalva*, 21 I. & N. Dec. at 37. The strong presumption of delivery is justified for certified mail because of the extra assurances of effective delivery provided by the U.S. Postal Service. When certified mail is used, the Postal Service's delivery efforts are documented: there is a return receipt or written proof of attempted delivery and notification to the addressee of certified mail. *See id.* Accordingly, to overcome the strong delivery presumption for certified mail, *Grijalva* required the alien to "present substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery" or nondelivery. *Id.* Not long after the BIA decided *Grijalva*, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which among other things eliminated the certified mail requirement. Pub. L. No. 104-208, § 304, 110 Stat. 3009-546, 3009-587 (1997) (codified at 8 U.S.C. § 1229(a)(1)). Under IIRIRA a notice to appear may be sent to the alien by regular mail. *Id.*

*Grijalva*'s evidentiary standard for rebutting the delivery presumption, "which made perfect sense in connection with certified mail,

clearly ha[s] no application under a regular mail regime." *Salta v. INS*, 314 F.3d 1076, 1080 (9th Cir. 2002). If an alien asserting nondelivery of regular mail is required to satisfy *Grijalva*, she will be "virtually without recourse to rebut the presumption of effective delivery." *Ghounem v. Ashcroft*, 378 F.3d 740, 744 (8th Cir. 2004). The type of rebuttal evidence required by *Grijalva*, such as documentary evidence from the Postal Service, simply does not exist "[i]n the common case of failed delivery through regular mail." *Id.* Accordingly, in Nibagwire's case where the notice was sent by regular mail, the BIA abused its discretion by applying both the delivery presumption for certified mail and *Grijalva*'s evidentiary standard for rebutting the presumption. *Maknojiya v. Gonzales*, 432 F.3d 588, 589 (5th Cir. 2005) (per curiam); *Ghounem*, 378 F.3d at 744-45; *Salta*, 314 F.3d at 1079. On remand the regular mail delivery presumption and the parallel evidentiary standard for rebutting the presumption must be used in evaluating the evidence on the receipt of notice issue.

Nibagwire proffers the following evidence in her effort to (1) rebut the presumption that regular mail is delivered and (2) prove that she did not receive the notice to appear. DHS records show that in late June 2003, shortly after her visa expired, Nibagwire filed an application for asylum with the DHS, thereby initiating a proceeding to obtain a benefit (asylum) for herself. She also appeared on July 16, 2003, for her scheduled interview with an asylum officer. *See Salta*, 314 F.3d at 1079 (noting that similar facts corroborate an asylum applicant's assertion that she did not receive a notice to appear for a formal hearing). A DHS document handed to Nibagwire after her interview on July 16, 2003, instructed her to return to the asylum office on July 30 to pick up the decision on her application. Nibagwire asserts additional facts in her affidavit: when she returned to the asylum office on July 30, 2003, she was told that she would receive a decision by mail; she did not receive notice of her removal hearing set for October 1, 2003; specifically, between July 30 and September 29, 2003, she did not receive any mail from the DHS at the Adelphi, Maryland, address that she had provided the agency; she was unemployed and therefore present at the Adelphi address most of the time, and she asked her two friends with whom she was staying in Adelphi whether she had received any mail; her friends reported that they had not seen any mail addressed to her; although she moved to Silver Spring, Maryland, on September 29, 2003, she did not register a new

address with the DHS because she did not know how long she would be in Silver Spring, and the Adelphi address was the address of close friends;[2] on October 2, 2003, one of her Adelphi friends called to report that she had gotten a letter from the Department of Justice; Nibagwire immediately picked up the letter, which said that she had failed to appear at the October 1 hearing and that a removal order had been entered against her; and, on October 3, 2003, she called the immigration court "to ask how a decision could be made in [her] case without sending [her] a notice," J.A. 19. *See Joshi*, 389 F.3d at 736 (noting that a similar affidavit supports a claim of nonreceipt of a notice to appear); *Ghounem*, 378 F.3d at 745 (same).

Nibagwire's proffer is sufficient to warrant the BIA's consideration of whether she can (1) rebut the presumption that regular mail is delivered and (2) "demonstrate[ ] that [she] did not receive notice" of her removal hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). Accordingly, we grant the petition for review, vacate the BIA's order affirming the IJ, and remand to the BIA for further consideration of Nibagwire's motion to reopen her removal proceedings.

*PETITION FOR REVIEW GRANTED*;
*VACATED AND REMANDED*

---

[2]The IJ, in denying Nibagwire's motion to reopen, noted that she had moved in September 2003 without notifying the immigration court or the DHS. It does not appear that Nibagwire's failure to supply her new address prevented her from receiving the notice to appear because the blurry copy of the certificate of service indicates that the notice was mailed in July 2003, well before her September 29 move and her October 1 hearing.