Edson Silva–Carvalho LOPES,
Petitioner,

v.

Alberto GONZALES, Attorney
General, Respondent.

Docket No. 05–6878–AG.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 23, 2006.

Decided: Nov. 2, 2006.

Steve Lyons, Law Offices of Martin C. Liu, PLLC, New York, NY, for Petitioner.

Graham L. Teall, Assistant United States Attorney (Stephen J. Murphy, United States Attorney for the Eastern District of Michigan, on the brief), Detroit, MI, for Respondent.

Before WINTER, McLAUGHLIN, and STRAUB, Circuit Judges.

PER CURIAM.

Petitioner Edson Silva–Carvalho Lopes ("Silva") seeks review of a December 2, 2005 decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an immigration judge's denial of his motion to reopen and rescind an in absentia order of removal. The precise issues before us are whether the BIA (1) erred in applying a presumption of receipt to a notice to appear that was properly addressed and mailed according to regular office procedures, and (2) exceeded its discretion in dismissing Silva's appeal without considering all of the circumstantial evidence he presented in support of his claim of non-receipt.

We hold that a presumption of receipt attaches to a piece of mail that is properly addressed and sent according to normal office procedures. We further hold that the BIA exceeded its discretion in dismissing Silva's appeal without considering all of the circumstantial evidence he proffered to rebut that presumption. We thus grant the petition, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Silva, a native and citizen of Brazil, entered the United States without inspection on approximately September 7, 2000. In 2001, Silva's employer filed an application

for Alien Labor Certification on Silva's behalf, which, if approved, would render him eligible to apply for an adjustment of status to that of permanent resident, a decision that rests within the discretion of the Attorney General. *See* 8 U.S.C. § 1255(i).

Approximately two years later, officials from U.S. Immigration and Customs Enforcement took Silva into custody while he was working in Augusta, Maine. At that time, Silva was served with a notice to appear warning him, in English, that if he failed to appear at his next hearing, or at any later hearing, "a removal order may be made by the immigration judge in [Silva's] absence."

Silva bonded out of custody several weeks later, and shortly thereafter sent the Immigration Court a change of address form on which he listed his address as "86 Agawam Street, Apt. 06, Lowell, MA 01852–4722." The INS mailed to that address a notice to appear for an August 26 hearing. This notice warned Silva in English that his failure to attend the hearing "may result" in his arrest or the entry of an in absentia order of removal.

Silva failed to appear for his scheduled hearing, and the immigration judge ("IJ") ordered him removed in absentia. Silva claims that he failed to attend the hearing because he never received the notice to appear. The same day that the IJ issued the removal order, the INS mailed a copy to Silva's Agawam Street address. At oral argument, Silva conceded that he received a copy of the order, but maintained that he never received the notice to appear.

In February of 2005, Silva's Alien Labor Certification application was approved, and two months later he applied for permanent residency. On his application, he disclosed the pending order of removal. He later filed a motion to reopen his immigration proceedings on the ground that he never received notice of his removal hearing. In support of his motion he submitted a six-paragraph affidavit asserting, in relevant part, that he "did not receive the notice for the August 26, 2003 master calendar hearing." He further maintained that in light of his eligibility for permanent residency, he had no reason to abscond.

The IJ denied Silva's motion to reopen and a subsequent motion to reconsider. Silva appealed the denial of the motion to reopen, and the BIA dismissed the appeal in a written opinion dated December 2, 2005. The BIA noted that in *Matter of Grijalva*, 21 I & N Dec. 27, 37 (BIA 1995), it "held that there is a presumption that the Postal Service properly performs its duties and that this presumption of effective service can only be overcome with 'substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery.'" The BIA also noted that it had announced those standards at a time when the relevant statute required notices to be served by certified mail, whereas now the statute permits service by regular first class mail.

Nevertheless, the BIA reasoned that as a general matter, "[i]n the absence of clear evidence to the contrary, it is presumed that public officers [such as Immigration Court officials and Postal Service employees] properly discharge their duties." Accordingly, it employed a rebuttable presumption that the notice was properly delivered to Silva, and that he therefore received it. The BIA concluded that Silva had failed to overcome the presumption because he had offered only his affidavit, which amounted to "a bare claim of non-receipt." In particular, the BIA noted that the affidavit failed to include information such as whether anyone else living at Silva's address knew what hap-

pened to the notice of hearing, or whether there was a history of mail delivery problems at the home.

Silva then filed this petition, primarily urging that (1) the BIA erred in applying a "strong presumption" of receipt, and the strict evidentiary requirements for rebuttal of that presumption, set forth in *Grijalva*, and (2) he rebutted any lesser presumption of delivery that might apply, either through his affidavit alone or through his affidavit in conjunction with other facts he put before the BIA.

## DISCUSSION

### I.  *Statutory and Administrative Background*

Pursuant to 8 U.S.C. § 1229(a)(1), a notice to appear "shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien or to the alien's counsel of record, if any)." As noted above, while the statute currently provides for service by first class mail, prior to 1997 it required that notice be sent via certified mail, return receipt requested. 8 U.S.C. § 1252b(a)(2)(A), (f)(1) (repealed, effective 1997). If an alien fails to appear for his removal hearing, and if the INS "establishes by clear, unequivocal, and convincing evidence that . . . written notice was . . . provided and that the alien is removable," then the IJ must enter an in absentia order of removal. 8 U.S.C. § 1229a(b)(5)(A). The INS need not demonstrate that the alien actually *received* notice in order to trigger the non-discretionary entry of an in absentia order of removal. Instead, the statute sets forth that "written notice by the Attorney General shall be considered sufficient for purposes of this subparagraph if provided at the most recent address provided [by the alien]." *Id.*

Once an IJ enters an in absentia order of removal, the alien may move to reopen his case and rescind the order, on the ground that he "did not receive notice" of the hearing in the first place. 8 U.S.C. § 1229a(b)(5)(C)(i), (ii). As the use of the word "receive" establishes, when considering the motion to reopen, the central issue no longer is whether the notice was properly mailed (as it is for the purpose of initially entering the in absentia order), but rather whether the alien actually *received* the notice. *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir.2004).

In *Matter of Grijalva*, 21 I & N Dec. 27 (BIA 1995), the BIA established additional standards applicable to a motion to reopen for the purpose of rescinding an in absentia order of removal on the ground of non-receipt. Given the then-existing certified mail requirement, since repealed, the BIA summarized its holding as follows: "We find that in cases where service of a notice of a deportation proceeding is sent by certified mail through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." *Id.* at 37. Further, the BIA held that a "bald and unsupported denial of receipt of certified mail notices is not sufficient to support a motion to reopen." *Id.* While the "presumption of effective service may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service," in order to do so an alien must "present substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery." *Id.*

### II.  *The BIA Properly Applied a Presumption of Receipt*

Initially, we reject Silva's claim that the notices to appear were defective

because they did not advise him in his native Portuguese that an in absentia order could be entered against him if he failed to appear. The relevant statute does not require that notice be provided in any particular language. 8 U.S.C. § 1229(a)(1)(G); *Flores–Chavez v. Ashcroft*, 362 F.3d 1150, 1155 n. 4 (9th Cir. 2004).

Silva next maintains that the BIA erred by applying the *Grijalva* standards to his appeal because those standards apply only where the record contains proof of attempted delivery and notification by certified mail. While we agree with Silva's contention that *Grijalva's* exacting standards apply only within the context of certified mail, we disagree with Silva's reading of the BIA's decision in this case. Although the BIA cited *Grijalva*, it did not expressly apply the "strong presumption" set forth there. Instead, the BIA relied on the more general presumption that "public officers," such as Immigration Court and Postal Service personnel, "properly discharge their duties." The application of this presumption accords with our own holding, albeit outside the immigration context, that a presumption of receipt exists where a piece of mail is "properly addressed and mailed in accordance with regular office procedures." *Akey v. Clinton County*, 375 F.3d 231, 235 (2d Cir. 2004) (holding that under such circumstances, the sender is "entitled to a presumption that the notices were received").

■ Further, this approach accords with the holdings of several other courts of appeal to have considered the issue within the immigration context. Although courts generally have held that the precise *Grijalva* standards apply only when notice is sent by certified mail, they nevertheless have continued to provide for *some* presumption of receipt when notice is sent by regular mail. *Nibagwire v. Gonzales*, 450 F.3d 153, 156 (4th Cir.2006); *Ghounem v. Ashcroft*, 378 F.3d 740, 744–45 (8th Cir. 2004); *Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir.2004); *Salta v. INS*, 314 F.3d 1076, 1079 (9th Cir.2002).

■ We hold that even in the context of regular mail, a presumption of receipt is proper so long as the record establishes that the notice was accurately addressed and mailed in accordance with normal office procedures. In this case, it is undisputed that the notice to appear was properly addressed, and the record contains a certificate of service setting forth that the notice was sent by regular mail.[1] Accordingly, the BIA properly applied a rebuttable presumption that Silva received the notice to appear.

### III. *The BIA Exceeded Its Discretion By Failing to Consider All the Facts Relevant to Silva's Claim of Non–Receipt*

■ Although the BIA properly applied a presumption of receipt, it failed to consider all the evidence that Silva offered to rebut that presumption. The BIA wrote that Silva offered "no proof ... beyond a bare claim of non-receipt." We disagree. Although an affidavit of non-receipt might be insufficient by itself to rebut the pre-

1. Silva urges that the presumption of receipt should not apply here because the record does not contain "clear, unequivocal and convincing evidence" of mailing as required by 8 U.S.C. § 1229a(b)(5). However, the statute upon which he relies is inapt. That provision concerns only the requirements that the INS must satisfy so that the IJ may *initially* enter the in absentia order—it does not thrust upon the INS any evidentiary requirements applicable to the *subsequent motion to reopen and rescind filed by Silva*. In any event, we find that the certificate of service provided sufficient basis for the IJ to enter the in absentia order.

sumption, it does raise a factual issue that the BIA must resolve by taking account of *all* relevant evidence—not merely that evidence sufficient under *Grijalva.* *Joshi,* 389 F.3d at 736–37. Here, the BIA failed to consider three facts that might weigh in favor of Silva. First, by filing an application for Alien Labor Certification in 2001, he initiated a proceeding to obtain a benefit, which makes it less likely that he would simply ignore a later immigration proceeding of which he had notice. *Nibagwire,* 450 F.3d at 157; *Ghounem,* 378 F.3d at 745; *Salta,* 314 F.3d at 1079. The existence of that pending application also arguably makes it less likely that Silva would have a motive to avoid immigration proceedings. Second, by promptly providing the INS with a change of address after he posted bond, he has done something to illustrate—again, at least arguably—that he is not an absconder. Third, Silva disclosed the order of removal when he filed an Application to Register Permanent Resident or Adjust Status in April of 2005; this disclosure could—but need not—be construed as an indication that he would similarly have done what was required of him had he known of the hearing. The BIA's failure to consider this evidence constitutes an excess of discretion. *Joshi,* 389 F.3d at 736–37; *see also Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992) ("[W]e cannot assume that the BIA considered factors that it failed to mention in its decision.") (internal quotation marks omitted).

We do not wish to imply that on this evidence the BIA must grant Silva's appeal. Rather, we hold only that (1) it is proper to apply a presumption of receipt to a notice sent by regular mail where the record establishes that the notice was properly addressed and mailed according to normal office procedures, and (2) on a motion to reopen, the BIA must consider all relevant evidence, including circumstantial evidence, offered to rebut that presumption.[2] We further note that the BIA is free to weigh against Silva the fact that he received the order of removal in 2003, but did not move to reopen his case for more than two years.

For the reasons set forth above, the petition is GRANTED, the decision of the BIA is VACATED, and the case is REMANDED for further proceedings consistent with this opinion. The pending motion for a stay of removal is DENIED as MOOT.

**2.** Given our holding, we do not reach Silva's claim that his petition should be granted in the interest of "fundamental fairness." Further, we note that Silva's speculative arguments as to his eligibility for future relief, such as adjustment of status, are not properly raised in this petition, which concerns only his motion to reopen and rescind.