# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REHSEMPATA SEMBIRING,
                      *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                      *Respondent.*

No. 04-74076

Agency No.
A96-353-121

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
July 13, 2007—Pasadena, California

Filed August 24, 2007

Before: Barry G. Silverman, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge William A. Fletcher

**COUNSEL**

Rehsempata Sembiring, pro se, Mission Viejo, California; Caleb E. Mason, California Polytechnic State University, Pomona, California, for the petitioner.

Jennifer Paisner, Arthur L. Rabin, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Petitioner Rehsempata Sembiring applied for asylum in May 2003. Now, more than four years later, we evaluate a petition for review in which she seeks a hearing on that appli-

cation. Sembiring appeared in the Immigration Court on August 5, 2003, the date originally scheduled for her hearing, only to find that she had been ordered removed in absentia six days earlier. The Immigration and Naturalization Service (now the Department of Homeland Security) contends that it sent her by regular mail a notice that her hearing had been rescheduled to the earlier date. Sembiring contended at the time, and has contended ever since, that she never received such a notice.

Under 8 U.S.C. § 1229a(b)(5)(A), an Immigration Judge must enter a removal order in absentia if the alien fails to appear for a hearing in a removal proceeding and if the government "establishes by clear, unequivocal, and convincing evidence that the written notice [required under 8 U.S.C. § 1229(a)(1) or (2) has been] provided [to the alien] and that the alien is removable." Section 1229(a)(1) and (2) both provide that written notice "shall be given in person to the alien (or, if personal service is not practicable, through service by mail to the alien . . . )." These provisions have been amended to authorize the government to use regular first class mail to fulfill the requirements for "service by mail," where the original provision required the government to use certified mail. *Compare* 8 U.S.C. § 1229(a)(1), (2) *with* 8 U.S.C. § 1252b(a)(1) (1995), *repealed by* Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, div. C, tit. III, § 308(b)(6), 110 Stat. 3009-546, 3009-615. *See generally Salta v. INS*, 314 F.3d 1076, 1078-79 (9th Cir. 2002) (discussing the distinctions between the provisions). Under § 1229a(b)(5)(C)(ii), an alien may obtain rescission of a removal order entered in absentia at any time "if the alien demonstrates that the alien did not receive notice in accordance with" § 1229(a)(1) or (2).

In *Salta*, we held that the "strong presumption" of effective service that had applied when service was by certified mail does not apply to service by regular mail, and that the "fairly strong evidence" that had been necessary to rebut the "strong

presumption" is not required. *Id.* at 1079. In this case, we apply the lesser presumption of effective service applicable to regular mail. We hold that petitioner Sembiring presented sufficient evidence in the Immigration Court to overcome the presumption of effective service, and therefore to "demonstrate[ ] that [she] did not receive notice." § 1229a(b)(5)(C)(ii). Moreover, that evidence was credible, corroborated, and wholly unrefuted by the government. Because Sembiring demonstrated that she did not receive service, it was an abuse of discretion for the Immigration Judge to refuse to reopen proceedings in order to rescind the in absentia removal order.

## I.   Background

Rehsempata Sembiring entered the United States from Indonesia on February 28, 2002, under a non-immigrant B-1 visitor visa. On May 3, 2003, Sembiring filed an asylum application, contending that she feared persecution in Indonesia because of her Christian religion. Sembiring contended, among other things, that friends and family members had been harmed because of their Christian faith-based practices, and that she had been "threatened with having her house burned down" by government officials because of her own Christian practices. In her asylum application, Sembiring acknowledged that she had overstayed her visa. She stated that she did not apply for asylum earlier because she "did not know about asylum before." Sembiring listed her current address on her asylum application.

Sembiring had not been served with a notice to appear when she applied for asylum. After she submitted her application, the Immigration and Naturalization Service ("INS"), now the Department of Homeland Security, initiated removal proceedings against her. On July 3, 2003, Sembiring was personally served with a written notice to appear for removal proceedings. The notice instructed Sembiring to attend a hearing before an Immigration Judge ("IJ") on August 5, 2003, at 1:00 p.m.

The administrative record contains a one-page "Notice of Hearing in Removal Proceedings" rescheduling Sembiring's initial hearing to July 30, 2003 — six days earlier. The "Certificate of Service," printed at the bottom of the page is in the same typeface as the notice itself. The Certificate of Service states, "This document was served by: Mail (M) Personal Service (P)." The "M" is circled. Near the "M" is a handwritten date of July 8, 2003. However, at the top of the page, the notice itself is dated the next day, July 9, 2003. Sembiring's listed address on the one-page notice is the same as the address provided in her asylum application.

Two identical copies of the one-page rescheduling notice appear in the administrative record. Immediately following the first and immediately preceding the second is what appears to be a photocopy of an envelope. Its placement in the record suggests that it is the envelope used to mail the notice. However, the only things that are clearly discernible are the return address of the Immigration Court in Los Angeles on the left hand side and some numbers followed by a bar code at the bottom. There is a faint outline of a portion of a postmark on the right hand side. There is also a faint outline of what may be a date stamp in the middle of the envelope where the name and address of the addressee would ordinarily be written. Almost nothing is readable, except that the letters "LOS" (as in "Los Angeles," perhaps) appear at the beginning of the last line of the stamp. Sembiring's address is in Mission Viejo rather than Los Angeles. There is no indication whatsoever of a name or address of an addressee anywhere on the envelope.

Sembiring did not appear in the Immigration Court on July 30, 2003. A removal hearing was nonetheless held on that date, and she was ordered removed in absentia. The removal order was mailed to the Mission Viejo address listed on Sembiring's asylum application and on the rescheduling notice.

On August 5, 2003, the originally scheduled hearing date, Sembiring appeared pro se in the Immigration Court. In an

unsworn, signed, typewritten letter to the Immigration Court dated August 11, 2003, Sembiring described what had happened. Her letter states:

> I request a motion to reopen because, when I show up on the 5TH of August, the lady in 15th floor told me that my hearing date was reschedule and I never got the notice from the mail.

> I did receive the notice of removal precedingwhich is I did not understand what it was all about until I show up to the court on the 5TH of August.

> I never receive the first letter saying that my hearing date was reschedule.

> Enclosed please find the notice of appearthat show that my hearin was the 5th of August.

> Please reopen my case since I never got / know that I have to show up on any other date.

(Errors in original.) The letter was filed in the Immigration Court on August 14, 2003. Immediately following the letter in the administrative record is a copy of the original notice scheduling Sembiring's hearing for August 5, as well as a copy of the in absentia order of removal dated August 1. We assume, as did the BIA, that both documents were attached to Sembiring's letter.

The IJ construed Sembiring's pro se letter as a "motion to reopen" and denied it. Citing our decision in *Salta*, the IJ stated that even when certified mail is not used "there still exists a presumption that the postal officers properly discharged their duties." The IJ gave two reasons for concluding that Sembiring's statement that she did not receive the notice of the changed hearing date was "unsupported by the evidence presented." First, the IJ stated that the address on the

rescheduling order was the same as the address provided by Sembiring in her asylum application, that Sembiring had not alleged that she had moved, and that she also had not filed a change of address form. Second, again citing *Salta*, the IJ stated that Sembiring had failed to overcome the presumption of proper delivery because "she did not allege that she commonly has problems with receipt of her mail, nor did she submit any evidence, such as an affidavit, demonstrating that she failed to receive the notice of hearing." The IJ stated that "statements in motions are not evidence and are, therefore, not entitled to evidentiary weight."

Sembiring appears to have received the IJ's denial of her motion to reopen on August 17. On August 20, she retained counsel. Her counsel filed a timely notice of appeal of the IJ's decision with the Board of Immigration Appeals ("BIA"). He also submitted to the IJ a motion to reconsider. Attached to the motion was his own declaration, a declaration by Sembiring, and a handwritten letter by Sembiring. Sembiring's declaration asserted that she had "never received notice of the reset date at my address despite the fact that my address has always remained the same, and I have never refused mail at that address." She also declared that when she appeared for her hearing on August 5, 2003, and the clerk informed her that she had already been ordered deported, she asked the clerk what she should do. Sembiring declared that the clerk told her that she "needed to write a letter to the Judge telling him that [she] did not receive notice of [her] hearing, and then [her] case would be reopened." Sembiring's handwritten letter, addressed "To Whom It My [sic] Concern," was not dated. It stated that when Sembiring arrived at noon for her 1:00 p.m. court date on August 5, she was informed that she had been deported in absentia. The letter explained that the clerk "ask me to send the letter to the Judge. Ask the Judge a motion to reopen my file. I immediately followed what I was told to do. I swear that what I said is the truth."

The government opposed Sembiring's motion to reconsider, which it described as a motion to reopen, on two

grounds. First, the government argued that the IJ did "not have jurisdiction to consider Respondent's motion to reopen." Second, the government argued that the motion failed on the merits. The administrative record contains no indication that the IJ decided Sembiring's motion to reconsider.

The BIA affirmed the IJ's denial of Sembiring's motion to reopen, concluding that "notice was properly served on the respondent in accordance with the Act." The BIA concluded that our decision in *Salta* is "distinguishable" because, unlike the petitioner in *Salta*, Sembiring "did not initiate proceedings and has no record of previous court appearances." In addition, "the record of proceedings d[id] not contain the respondent's sworn declaration."

Sembiring filed a petition for review. We have jurisdiction under 8 U.S.C. § 1252.

## II.    Standard of Review

In denying Sembiring's appeal, the BIA cited *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994). The BIA thereby signaled "that it had conducted an independent review of the record and had exercised its own discretion in determining that its conclusions were the same as those articulated by the IJ." *Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir. 2005) (en banc). We review the denial of a motion to reopen for an abuse of discretion. *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005). "The BIA abuses its discretion when it acts 'arbitrarily, irrationally or contrary to the law.'" *Id.* (quoting *Lainez-Ortiz v. INS*, 96 F.3d 393, 395 (9th Cir. 1996)). The IJ's findings of fact are reviewed for substantial evidence and will be upheld "if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *See Abebe*, 432 F.3d at 1039-40 (internal quotation marks omitted). We review questions of law de novo. *Id.* at 1040.

## III.    Discussion

**[1]** A notice to appear in removal proceedings "shall be given in person to the alien," unless "personal service is not practicable," in which case notice may be accomplished "by mail." 8 U.S.C. § 1229(a)(1). Before § 1229(a) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), its predecessor statute required that mail service be accomplished by certified mail. 8 U.S.C. § 1252b(a)(1) (repealed 1997). In IIRIRA, Congress relaxed the requirement to allow the government to use regular mail to serve a notice to appear for a removal hearing. IIRIRA, Pub. L. No. 104-208, div. C., tit. III, § 304(a)(3), 110 Stat. 3009-546, 2009-587 (1997) (codified at 8 U.S.C. § 1229(a)(1)). "[A]ny change or postponement in the time and place of such [removal] proceedings" is governed by the same notice requirements as for the initial notice to appear under § 1229(a)(1). 8 U.S.C. § 1229(a)(2)(A).

If an alien does not appear at a removal proceeding, § 1229a(b)(5)(A) directs the IJ to enter a removal order in absentia "if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was . . . provided" in accordance with § 1229(a)(1) or (2) and that the alien is removable. An in absentia removal order may be rescinded "at any time if the alien demonstrates that the alien did not receive notice" in accordance with § 1229(a)(1) or (2). *Id.* § 1229a(b)(5)(C)(ii). A motion to reopen in order to rescind a removal order entered in absentia, based on a contention that notice was not received, "must include documentary evidence." 8 C.F.R. § 208.2(c)(3)(ii).

### A.    Background

**[2]** The evidentiary requirements for an alien to demonstrate that he or she did not receive notice have changed over time. Under the pre-IIRIRA version of the statute, the BIA held that there was "a strong presumption of effective ser-

vice" when there was "proof of attempted delivery and notification of certified mail." *In re Grijalva*, 21 I. & N. Dec. 27, 37 (BIA 1995); *see also Arrieta v. INS*, 117 F.3d 429, 432 (9th Cir. 1997) (per curiam) (applying *Grijalva* and explaining that if petitioner rebuts the presumption, "the burden shifts" to the government to "show that a responsible party refused service" of the certified mail). The BIA wrote in *Grijalva* that an alien could overcome the "strong presumption of effective service" and establish non-receipt by submitting "substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery." 21 I. & N. Dec. at 37.

After IIRIRA relaxed the notice requirement to allow delivery by regular rather than certified mail, we reassessed the strength of the presumption of effective service. In *Salta*, petitioner Salta had asked the INS to issue an "Order to Show Cause so that she could apply for Cancellation of Removal." 314 F.3d at 1077. Salta and her counsel attended a removal hearing, but the hearing was continued because the Immigration Court had not yet received Salta's file. *Id.* The INS then sent, by regular mail to the address previously provided by Salta, a notice scheduling the next hearing. Salta did not attend the next hearing and was ordered removed in absentia. *Id.* She filed a motion to reopen the removal proceedings on the ground that she had not received notice. The IJ denied her motion because she "had not met her burden" to "demonstrate[ ] that [she] did not receive notice." *Id.*; 8 U.S.C. § 1229a(b)(5)(C)(ii).

**[3]** We concluded in *Salta* that the IJ and BIA abused their discretion in applying the "strong presumption of effective service," applicable to service by certified mail, to a case in which service had been made (or attempted) by regular mail. 314 F.3d at 1079. We held that "[a]lthough it is still proper to presume that postal officers properly discharge their duties, delivery by regular mail does not raise the same 'strong pre-

sumption' as certified mail, and less should be required to rebut such a presumption." *Id.* (citation omitted). We explained that the evidentiary standard for rebutting the presumption, "which made perfect sense in connection with certified mail, clearly ha[s] no application under a regular mail regime." *Id.* at 1080. We also described one means by which Salta could establish the affirmative defense of non-receipt under § 1229a(b)(5)(C)(ii) on the facts of her case:

> Where a petitioner actually initiates a proceeding to obtain a benefit, appears at an earlier hearing, and has no motive to avoid the hearing, a sworn affidavit from Salta that neither she nor a responsible party residing at her address received the notice should ordinarily be sufficient to rebut the presumption of delivery and entitle Salta to an evidentiary hearing to consider the veracity of her allegations.

*Id.* at 1079.

Because we held for the first time in *Salta* that a weaker presumption of effective service applies to service by regular mail, the IJ and BIA had not had a chance to apply the weaker presumption. We therefore remanded under the new standard to the BIA "with instructions to remand to the IJ to allow both Salta and the INS to supplement the record and to conduct an evidentiary hearing to determine whether Salta should be permitted to re-open" her proceedings. *Id.*

All other circuits that have addressed the issue, save one, have followed the approach we adopted in *Salta*. They require less evidence to overcome the presumption of effective service for notices served by regular mail than for notices served by certified mail. *See Lopes v. Gonzales*, 468 F.3d 81, 85 (2d Cir. 2006) (per curiam); *Nibagwire v. Gonzales*, 450 F.3d 153, 156 (4th Cir. 2006); *Maknojiya v. Gonzales*, 432 F.3d 588, 589 (5th Cir. 2005) (per curiam); *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004); *Ghounem v. Ashcroft*, 378 F.3d

740, 744-45 (8th Cir. 2004). *But see Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir. 2004) ("[T]he principles [that cases involving certified mail] espouse regarding the alien's burden to refute the presumption of notice apply also to notice by regular mail . . . ."). In *Joshi*, Judge Posner explained that the Seventh Circuit's application of a lower evidentiary burden to overcome the presumption when a notice is sent by regular mail is based on the common experience that "[m]ost letters are delivered, but some aren't." 389 F.3d at 735.

### B.   Application of *Salta*

**[4]** In this case, the government, echoing the reasoning of the IJ and BIA, argues that Sembiring's "contention that this Court's decision in *Salta* . . . controls her case is misplaced." We disagree. To the extent that the IJ and BIA, and now the government, are attempting to confine *Salta* to its particular facts, they are misreading our decision. *Salta* announced, as a general rule, that the presumption of effective service of notices to appear by regular mail is weaker than the presumption when applied to delivery by certified mail. 314 F.3d at 1078-79. Sembiring's notice to appear that rescheduled her hearing was sent via regular mail (if it was sent at all), so the weaker presumption announced in *Salta* applies to Sembiring's case.

Under *Salta*, less evidence is required to overcome the presumption of effective service than under *Grijalva*. This lower evidentiary standard makes good sense. If a letter is sent by certified mail, there is a paper trail in Postal Service records showing both mailing and receipt (or non-receipt). By contrast, there is no Postal Service paper trail for regular mail. There is seldom any administrative paper trail either, other than a copy of the notice in question and, sometimes, a copy of the envelope in which the notice was sent.

As we previously held in *Salta*, "some of the *Grijalva-Arrieta* proof requirements (e.g., documentary evidence from

the Postal Service, third party affidavits indicating improper delivery, etc.) . . . clearly have no application under a regular mail regime." 314 F.3d at 1080. If the evidence described in *Grijalva* "were the standard under the current statute, we would leave respondents virtually without recourse to rebut the presumption of effective delivery." *Ghounem*, 378 F.3d at 744. Such a result would defeat the purpose of Congress's express authorization for rescission of in absentia removal orders when the alien "did not receive notice." 8 U.S.C. § 1229a(b)(5)(C)(ii).

**[5]** The test for whether an alien has produced sufficient evidence to overcome the presumption of effective service by regular mail is practical and commonsensical rather than rigidly formulaic. In the typical regular mail case, the only proof of non-receipt beyond "the respondent's statement that he or she did not receive notice," *Ghounem*, 378 F.3d at 744, will be circumstantial evidence. In a few cases, non-receipt may be shown by a single piece of evidence, such as when evidence shows that an incorrect address was used. *See, e.g.*, *Terezov v. Gonzales*, 480 F.3d 558, 565 (7th Cir. 2007). Sometimes, however, several pieces of circumstantial evidence may be appropriate.

For example, we noted in *Salta* that the petitioner had "initiate[d] a proceeding to obtain a benefit," which was probative of her allegation of non-receipt. 314 F.3d at 1079. She had "voluntarily approached" the government to request that it "issue an Order to Show Cause so that she could apply for Cancellation of Removal." *Id.* at 1077. Because she sought an order that would benefit her, she did not have a "motive to avoid the hearing." *Id.* at 1079. Moreover, Salta had "appear-[ed] at an earlier hearing," that had been continued because the court "had yet to receive her file." *Id.* at 1077, 1079. We held that in those circumstances, where the petitioner was represented by counsel, "a sworn affidavit from Salta that neither she nor a responsible party residing at her address received the notice should ordinarily be sufficient to rebut the pre-

sumption of delivery." *Id.* at 1079; *see also Lopes*, 468 F.3d at 86 (evidence that the petitioner (1) had "initiated a proceeding to obtain a benefit" by submitting an application for Alien Labor Certification, (2) had promptly notified the government of his change of address, and (3) had disclosed his order of removal when he subsequently filed an application with the government); *Alrefae v. Chertoff*, 471 F.3d 353, 360 (2d Cir. 2006) (evidence that an alien had "filed his motion to rescind and reopen within a few months of the scheduled removal hearing"); *Nibagwire*, 450 F.3d at 157 (evidence that the petitioner (1) had already "initiat[ed] a proceeding to obtain a benefit" by "fil[ing] an application for asylum with the DHS," (2) had appeared "for her scheduled interview with an asylum officer," and (3) possessed an administrative document corroborating statements in her affidavit).

In evaluating this petition for review, we consider only the evidence that was before the IJ when he denied Sembiring's motion to reopen, for this was the ruling that was appealed to the BIA. We do not consider the additional evidence presented to the IJ in support of Sembiring's motion to reconsider, for the record does not indicate that the IJ ruled on this motion, and the BIA does not appear to have considered this evidence in ruling on the appeal of the denial of the motion to reopen.

**[6]** We conclude that the BIA erred in deciding that Sembiring did not overcome the presumption of effective service. Sembiring's asylum application falls directly within *Salta*'s description of "initiat[ing] a proceeding to obtain a benefit." *See* 314 F.3d at 1079; *see also Nibagwire*, 450 F.3d at 157 (holding that filing an application for asylum is evidence that "rebut[s] the presumption that regular mail is delivered" and helps "prove that [the alien] did not receive the notice to appear"). Sembiring affirmatively sought asylum, thereby bringing herself to the attention of the government. Only after she had sought asylum did the government issue a notice to appear for a removal hearing. *Cf. Kaweesa v. Gonzales*, 450

F.3d 62, 68 (1st Cir. 2006) (observing that restrictions for the "exceptional circumstances" exception under § 1229a were "adopted in response to a serious problem of aliens deliberately failing to appear for hearings and thus effectively extending their stay in this country"). Like the alien in *Lopes*, Sembiring hoped to avoid removal through her asylum application. Thus, she did not have a "motive to avoid immigration proceedings." *See* 468 F.3d at 86; *see also Salta*, 314 F.3d at 1079.

**[7]** Sembiring did not have a record of appearing for previous immigration proceedings, but that was only because no previous proceedings had taken place. *Cf. Salta*, 314 F.3d at 1077. However, Sembiring did appear in the Immigration Court on her originally scheduled hearing date. Her pro se letter, construed by the IJ as a motion to reopen, plausibly explained her presence at the court on that date rather than the earlier, rescheduled date. Sembiring's letter was written promptly, six days after she appeared at the Immigration Court on August 5, 2003, and was filed with the court three days after that. *See Alrefae*, 471 F.3d at 360. Moreover, Sembiring attached to her letter both a copy of the first notice to appear that had been personally delivered to her, and a copy of the in absentia removal order that had been sent to her between the date of her rescheduled hearing and that of her original hearing. Thus, her letter included documentation that supported her claim.

**[8]** Finally, the evidence supporting the government's contention that the notice of rescheduling was actually mailed is weak. The rescheduling notice is dated July 9, 2003, but the signature at the bottom of the letter attesting to service by mail is dated the day before. Moreover, and possibly more important, a photocopy of what purports to be the envelope used to send the notice has the Immigration Court's return address clearly printed on it, but bears no indication whatsoever of either Sembiring's name or her address in Mission Viejo. The only visible mark in the middle of the envelope,

where Sembiring's name and address ought to appear, is the faint outline of what may be a date stamp, the bottom line of which begins with the letters "LOS."

**[9]** We recognize that Sembiring provided her explanation for not appearing at the rescheduled hearing in a pro se letter rather than in a sworn affidavit. We noted in *Salta* that an affidavit is one way to establish non-receipt of a notice sent by regular mail. *See* 314 F.3d at 1079. But a sworn affidavit is not always necessary.

**[10]** For four reasons, we hold that a sworn affidavit was not required to establish that Sembiring did not receive notice. First, as described above, the inquiry contemplated by *Salta* is a practical one under which many forms of evidence are relevant. If there is enough evidence to overcome the presumption of effective service without a sworn affidavit, the absence of such an affidavit is not fatal to a petitioner's motion under § 1229a(b)(5)(C)(ii).

**[11]** Second, the governing regulation does not require an affidavit to support a motion to reopen to rescind an in absentia removal order. We agree with the Second Circuit's statement in *Alrefae* that "although a motion to rescind is a type of motion to reopen, it is distinctive in that a 'motion to reopen for purposes of rescinding an in absentia [removal] order . . . seeks to restart proceedings as if the previous proceedings never occurred.' " 471 F.3d at 357 (quoting *Maghradze v. Gonzales*, 462 F.3d 150, 152 n.1 (2d Cir. 2006)) (alteration in original). The regulations adopted by the agency contain "Rules of Procedure" specifically applicable to "Notice of hearing procedures and in-absentia decisions." 8 C.F.R. § 208.2(c)(3)(ii). These rules govern motions to reopen to rescind in absentia removal orders. Section 208.2(c)(3)(ii) provides only that a motion to reopen on the ground that "[t]he alien did not receive the notice" must include "documentary evidence" demonstrating non-receipt. This section permits but does not require inclusion of an affi-

davit. *See also* 8 C.F.R. § 1003.23(b)(3) ("A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits *and other evidentiary material.*" (emphasis added)); *cf. Singh v. Gonzales*, ___ F.3d ___, 2007 WL 2050954, at *2-3 (9th Cir. July 19, 2007) (remanding motion to reopen to the BIA to consider the effect of affidavits of non-receipt of BIA final decision; no discussion of in absentia hearings or of *Salta*).

**[12]** Third, it makes little sense to require an affidavit under the circumstances presented in this case. When Sembiring filed her August 11 typewritten letter with the court, she was not represented by counsel. Her letter recounted a plausible story of what had happened, stating that she had not received notice of the change in hearing, that she had appeared on the date of the originally scheduled hearing, and that when she appeared on the original date "the lady in 15th floor told me that my hearing date was reschedule[d]." It is a long-established principle that the submissions of pro se aliens should be liberally construed. *Agyeman v. INS*, 296 F.3d 871, 878 (9th Cir. 2002). It is unreasonable to construe Sembiring's letter liberally as a motion to reopen because she is pro se (as the IJ did), only to deny that same pro se motion because the letter was not in the form of a sworn affidavit. Denial for failure to provide an affidavit is particularly unwarranted because Sembiring was limited by regulation to one motion to reopen. *See* 8 C.F.R. § 208.2(c)(3)(ii). *See generally United States v. Seesing*, 234 F.3d 456, 463 (9th Cir. 2001) (as amended) (reversing denial of prisoner's pro se motion when the denial "seriously diminished the possibility of successfully filing a future, properly drafted and documented, motion" because "[t]he rule of liberal construction . . . is for the benefit of the pro se prisoner; its rationale loses validity where it is invoked to the prisoner's disadvantage").

**[13]** Fourth, as we stated in *Lanza v. Ashcroft*, 389 F.3d 917 (9th Cir. 2004), "[t]he liberty interests involved in

removal proceedings are of the highest order. Removal visits a great hardship on the individual and deprives him [or her] of the right to stay and live and work in this land of freedom." *Id.* at 927. (second alteration in original; internal quotation marks omitted). In *Kaweesa v. Gonzales*, the First Circuit cited our decision in *Lanza* in granting an alien's petition for review, noting that hardship concerns "are amplified in a case . . . where an alien is seeking asylum." 450 F.3d at 69. Sembiring's case, like Kaweesa's, involves a removal order entered against an alien who contends that she will be persecuted if she is removed pursuant to an order that was entered at a hearing of which she plausibly contends she did not have notice. Denying Sembiring's motion to reopen because, acting pro se, she recounted her story in a letter rather than a sworn affidavit would unnecessarily elevate form over substance.

**[14]** We therefore hold that Sembiring presented sufficient evidence to the IJ to overcome the presumption of effective service, and to "demonstrate[ ]" that she "did not receive notice" of the rescheduled hearing. 8 U.S.C. § 1229a(b)(5)(C)(ii). This evidence was credible and wholly unrefuted. She is therefore entitled to rescission of her in absentia order of removal and a hearing on the merits of her asylum application. *See Singh v. Gonzales*, 412 F.3d 1117, 1122 (9th Cir. 2005) (remanding to "reopen removal proceedings and to rescind the removal order" when alien had established that he did not receive notice of removal hearing); *see also Terezov*, 480 F.3d at 566.

## Conclusion

Our decision in *Salta* establishes that the presumption of effective service that applies to a notice to appear sent, or purportedly sent, by regular mail is weaker than the "strong presumption" that applies to service or attempted service by certified mail. Petitioner Sembiring has presented sufficient evidence to overcome the presumption of effective service and thereby to "demonstrate[ ]" that she "did not receive

notice." We remand to the BIA with directions to remand to the IJ to grant Sembiring's motion to reopen in order to rescind the in absentia removal order entered against her more than four years ago.

Petition GRANTED; REMANDED.