In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2552

TARSEM SINGH,

*Petitioner*,

*v.*

ERIC H. HOLDER JR., Attorney General of
the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A074–967–132

ARGUED FEBRUARY 19, 2014 — DECIDED APRIL 16, 2014

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. The tidy caption for this petition for review belies the mystery of petitioner Singh's true identity. We are not confident of his full name or birthdate, for he possesses abundant, purportedly official documentation for several identities. Perhaps Mycroft Holmes, who solved complex international mysteries without ever leaving his armchair, would have been able to ferret out Singh's true

identity over a cup of Earl Grey tea. Unfortunately, the facts in this case leave us unable to distinguish the impossible from the merely improbable, so Singh's true identity remains a mystery.

Our inability to ascertain Singh's identity dooms his petition for review of an order finding him removable from the United States. Singh claims that the Board of Immigration Appeals erred in concluding that he received constitutionally adequate notice of his immigration proceedings during his detention by Immigration and Naturalization Services officers in 1997.[1] He also argues that the Board erred in finding that he could not establish inspection and admission into the United States. See 8 U.S.C. § 1255(a). Singh's due process claims hinge on establishing that he really is Tarsem Singh and was just fifteen years old when he was detained by the INS in 1997, which he is unable to do. Singh also cannot establish by clear and convincing evidence that he was inspected and admitted into the United States when he entered this country. We therefore deny his petition for review.

I.   *Factual and Procedural Background*

The petitioner says he is Tarsem Singh, born on June 13, 1982. He also claims that he entered the United States in May 1995. The abundant documents he has provided to immigration authorities, however, tell a more complicated story. In these documents, we see that Mr. Singh uses two names: Tarsem Singh and Simranjit Singh. He has provided to im-

---

[1] The INS ceased to exist in 2003 when most of its functions were transferred to the newly-created Department of Homeland Security. Since the focus of this petition is on events under INS jurisdiction, we use that reference for simplicity's sake.

migration authorities at least three different birth certificate translations (two for Tarsem Singh and one for Simranjit Singh). These translations list birthdates that differ by as much as four years. (Singh seems never to have provided an original birth certificate to U.S. immigration authorities.) He also possesses a photocopy of a passport for Tarsem Singh and a passport for Simranjit Singh that have different birthdates on them. (Singh claims that the passport photocopy is a copy of the passport he showed INS officials when he was detained in 1997; the original, he says, was lost.) Finally, Singh has claimed three different dates of entry into the United States separated by as much as three years.

Singh is a citizen of India and was born there in the late 1970s or early 1980s. At some point between 1994 and 1997, Singh entered the United States illegally. According to Singh, he was smuggled into the country on a commercial flight while dressed as a young girl and with the smuggler's daughter's passport. After he reached the United States and his family paid the smuggler, Singh says, he was released to his father and lived with him near Chicago.

We can say with confidence that in July 1997, while traveling to Virginia by bus to take a job there, Singh was detained by INS agents. The I-213 charging document the INS filled out during that detention lists his date of birth as May 21, 1978, making him nineteen years old when he was detained. It also shows a date of entry just one week prior to the detention and says that Singh was admitted without inspection. (Singh claims these entries were incorrect.) Finally, the I-213 also indicates that Singh was represented by counsel during his questioning, which Singh denies. Singh asserts

that he spoke very little or no English at the time and did not understand the agents' questions or statements to him.

The INS provided Singh with a Notice To Appear and released him to his employer, a Mr. Kapania, whose address was listed on the I-213 as Singh's United States address. Kapania completed an I-134 affidavit of support but did not execute an agreement to care for Singh's well-being and ensure his presence at all future immigration proceedings. See 8 C.F.R. § 236.3(b)(4).

Roughly a month after Singh's detention and release, Singh's father collected him from Kapania's house after he quarreled with Kapania over Singh's wages and treatment. According to Singh, his father was very upset when Singh told him that he had been stopped by police. (Singh says he did not understand, let alone tell his father, that he had been detained by the INS and was required to appear at an immigration hearing.) Singh claims that his father decided that the stop made it necessary to create a new identity for him. Singh contends that although he had previously been (and truly is) fifteen-year-old Tarsem Singh born on June 13, 1982, from then on he became nineteen-year-old Simranjit Singh born on February 4, 1978. Singh asserts that his mother, who was still living in India, procured a new Indian birth certificate and passport for him with the new false identity and that his father told him to use only the new identity from that time. According to Singh, he has lived as Simranjit Singh ever since.

After Singh's detention in Virginia in 1997, the INS mailed notice of the date and time of his immigration hearing to Kapania's address in Virginia. There is no evidence that Kapania passed along the information to Singh or his

father, or that Singh ever received notice of his hearing. Singh did not appear at the hearing, and on November 20, 1997, he was ordered deported in absentia.

INS officials do not appear to have connected Singh's new identity to the 1997 deportation order until 2010, when Singh himself filed a motion to reopen his 1997 immigration proceeding on the ground that he did not receive notice of that proceeding. The immigration court granted his motion to reopen and conducted two new hearings in 2011. In those hearings, Singh moved to terminate the proceedings, arguing that contrary to the I-213, he was only fifteen when he was detained in 1997 so that his detention violated INS regulations and his due process rights. See 8 C.F.R. § 236.3. He also argued that he had been inspected and admitted into the United States, so that he might be eligible for adjustment of his immigration status. See 8 U.S.C. §1255(a).

The immigration judge ruled that Singh was removable. The judge found that because Singh seemed to have told the INS agents that he was nineteen when they detained him, they had no reason to think he was actually fifteen instead. Further, Singh was personally served with his Notice To Appear. Under INS regulations, that is deemed effective service for aliens over fourteen years old. 8 C.F.R. § 103.8(c)(2)(ii). The judge therefore concluded that the proceedings against Singh had been properly initiated and that there was no due process problem. The judge also rejected Singh's claim that he had been inspected and admitted. His history of fraud and deception since entering the United States made his story difficult to credit, and the story was not clearly and convincingly corroborated. The judge therefore concluded that

Singh was removable but granted his request for a voluntary departure.

The Board of Immigration Appeals agreed on all points. The Board held that even if Singh was actually fifteen rather than nineteen when he was detained, he was still properly served with the Notice To Appear. INS regulations do not require service in the respondent's native language, and personal service is effective service for all minors over age fourteen. 8 C.F.R. § 103.8(c)(2)(ii). Further, according to the Board, Singh's post-detention change of identity showed that he had actual notice of the immigration proceedings, so no due process violation occurred. The Board also held that even if the INS's special provisions for the release of juveniles had been violated, see 8 C.F.R. § 236.3, reopening Singh's proceedings in 2010 cured any possible due process problem. Finally, the Board agreed with the immigration judge that Singh had not established inspection and admission. His testimony was not clear and convincing in light of his fraudulent and deceptive behavior since arriving in the United States, as well as the lack of corroboration of his account. This petition for review followed. We have jurisdiction under 8 U.S.C. § 1252.

II. *Analysis*

The Board issued a free-standing opinion, rather than merely adopting and supplementing the immigration judge's decision, so we review the Board's decision. *Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007). The Board's legal conclusions are reviewed *de novo*, but we review the Board's factual findings only for substantial evidence. *Chen v. Holder*, 604 F.3d 324, 330 (7th Cir. 2010). "[W]e will not overturn the agency's findings simply because we might have decided the

case differently;" rather, we may reverse only if the evidence compels a contrary result. *Id.*

A. *Due Process—Notice of the 1997 Proceeding*

Singh argues first that the INS's behavior when it detained him in 1997 was not reasonably calculated to provide him with actual notice of his proceedings and a meaningful opportunity to be heard, as required to satisfy due process. See *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999). Specifically, Singh argues that providing him with his Notice To Appear in a language he did not understand and then releasing him to his employer without taking the special precautions required in juvenile releases by 8 C.F.R. § 236.3 did not provide him with constitutionally adequate notice and thus violated his right to due process. Reopening his case did not cure the due process violation, Singh claims, because the INS continues to treat the 1997 detention as valid, making him ineligible for discretionary cancellation of removal. See 8 U.S.C. § 1229b(b) & (d).

Singh concedes that the INS personally served him with a copy of his Notice To Appear before releasing him in 1997, which complied with the INS's notice regulations. See 8 C.F.R. § 103.8. He argues, however, that the personal service was ineffective in his case because he did not speak sufficient English to understand what the INS officers told him and could not read the notice. In the immigration context, personal service in English to a non-English-speaker typically satisfies due process because it puts the alien on notice that further inquiry is needed, leaving the alien to seek help from someone who can overcome the language barrier. See *Nazarova v. I.N.S.*, 171 F.3d 478, 483 (7th Cir. 1999); *Ojeda-Calderon v. Holder*, 726 F.3d 669, 675 (5th Cir. 2013) (collecting

cases). It may be more difficult to put a juvenile on inquiry notice than an adult because juveniles may not recognize a need for further inquiry in circumstances where an adult would. We know, however, that Singh was in fact placed on inquiry notice of his proceeding by the 1997 detention because he found the incident important enough to tell his father soon after.[2] So whether Singh was a juvenile or not, he was placed on inquiry notice by the 1997 detention.

Singh also argues that personal service of the Notice To Appear was insufficient to satisfy due process requirements in his case because he was a juvenile when the INS detained him, and the INS failed to follow its regulations outlining special protections when a juvenile is released from INS custody. See 8 C.F.R. § 236.3. He claims that the release protections in § 236.3 work in concert with the notice provisions in 8 C.F.R. § 103.8 to provide constitutionally adequate notice to juveniles and that failing to comply with § 236.3 thus violated his right to due process. See *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1159–61 (9th Cir. 2004) (in light of due process concerns, construing regulations now codified as § 236.3 to require notice to responsible adult for teenage aliens).[3]

---

[2] Singh argues that telling his father does not show that he had actual notice because he did not understand that he had been detained by the INS. Actual notice is not required; inquiry notice suffices to satisfy due process. *Nazarova*, 171 F.3d at 483.

[3] Our conclusion that Singh was placed on inquiry notice by the 1997 proceeding does not resolve this argument. Singh argues that due process requires not only service to the juvenile, but also releasing the juvenile into the custody of a parent, guardian, adult relative, or other adult who will care for the juvenile and ensure his or her presence at future immigration proceedings. See 8 C.F.R. § 236.3. This would imply that placing the juvenile on inquiry notice, without also ensuring that he is

The factual foundation for this argument of course is that Singh was only fifteen when he was detained in 1997, as he now claims. This is not a self-evident proposition. In 1997, the INS noted on Singh's I-213 that he was born on May 21, 1978, making him nineteen when he was detained. (The Board later found that Singh at least told the INS that he was nineteen.) If the I-213 is correct (which Singh disputes), then the special protections for juveniles in 8 C.F.R. § 236.3 would not have applied to Singh's 1997 detention because they apply only to persons under the age of eighteen. See 8 C.F.R. § 236.3(a). So, Singh's due process argument regarding § 236.3 hinges on establishing that he was in fact only fifteen when he was detained in 1997.

In other words, we could reach the merits of his due process challenge and reverse the Board's decision on this ground only if we found that the evidence compelled the conclusion that Singh's true birthdate is June 13, 1982, as he contends now. See *Zhu v. Gonzales*, 465 F.3d 316, 318 (7th Cir. 2006) ("We will not grant the petition for review unless the petitioner demonstrates that the evidence not only supports reversal of the BIA's decision, but *compels* it.") (emphasis in original, internal quotations omitted).

We cannot make that finding. Singh has fallen far short of establishing that the evidence compels a conclusion that he was born on June 13, 1982. The I-213 lists his birthdate as May 21, 1978. Singh possesses a birth certificate translation

_____

shepherded through the immigration process by a responsible adult, does not satisfy due process. See *Flores-Chavez*, 362 F.3d at 1159–61. We do not decide that legal question, however, because the factual foundation is missing here.

for Tarsem Singh showing a birthdate of June 13, 1982, but he also possesses a passport and birth certificate for Tarsem Singh with a birthdate of May 21, 1982.[4] And that's only for Tarsem Singh. He also possesses extensive documentation showing that his name is Simranjit Singh and he was born on February 4, 1978.[5] Given the array of conflicting, supposedly official documents that Singh has in his possession, the record simply does not compel the conclusion that he was born on June 13, 1982. Singh's due process arguments regarding his 1997 detention therefore fail.

B.  *Admission and Inspection*

Singh also argues that we should reverse the Board and hold that he established inspection and admission into the United States. In general, "[a]n alien present in the United States without being admitted" is inadmissible. 8 U.S.C.

---

[4] Singh claims that the date on the I-213 is a transcription error. He submits an alleged photocopy of the passport he says he provided to the INS in 1997. The photocopy has a birthdate of May 21, 1982, contradicting the birthdate he asserts now. (Singh has not submitted a passport for Tarsem Singh that lists a birthdate of June 13, 1982, which he claims is his true birthdate.) Regardless of this discrepancy, the conflicting, supposedly authentic documents he has submitted to immigration authorities make it impossible to rely on this passport photocopy as conclusive evidence of his true birthdate or even the birthdate that he gave the INS in 1997.

[5] The Immigration Services Field Office Director who reviewed the I-130 petition that Singh's wife made on his behalf in 2011 appears to be the only immigration official to have conducted a detailed examination of Singh's documentation. She concluded that the most credible documents showed Singh's date of birth to be February 4, 1978, which would of course make him nineteen when he was detained in 1997. We do not rely on that finding, but it gives us added confidence in concluding that Singh cannot establish that he was fifteen when he was detained in 1997.

§ 1182(a)(6)(A)(i). However, an alien who was inspected and admitted into the United States is eligible for adjustment of status. 8 U.S.C. § 1255(a). The alien has the burden of establishing inspection and admission by clear and convincing evidence. See 8 U.S.C. §§ 1229a(c)(2)(B), 1361. So, if Singh can establish by clear and convincing evidence that he was inspected and admitted into the United States, he would be eligible for adjustment of status. Otherwise, he is ineligible for that relief. The Board held that Singh failed to meet this burden.

The Board did not err on this point. Singh asserts that he entered the United States via commercial airliner at JFK International Airport in New York. He admits, however, that he does not specifically remember passing through customs or being inspected by immigration officials. He has also claimed three different dates of entry in different immigration documents and proceedings, undercutting the credibility of his story. Singh's corroborating witnesses similarly attest to the fact that Singh told them he had arrived on an airplane, but they do not recall him saying anything about customs. These accounts do not establish inspection and admission. Even if Singh arrived in the United States via commercial airliner, we hesitate to assume that smugglers exit airports only by passing through immigration and customs controls.

Singh's I-213 and the I-130 petition filed on his behalf in 2001 reinforce our concerns.[6] The I-213 stated that there were

---

[6] The 2001 I-130 petition was filed by Singh's wife at the time. Singh has since divorced and remarried; his current wife filed an I-130 petition on his behalf in 2011, as discussed above in note 5.

no visa or entry stamps on the passport Singh provided to
the INS. The alleged photocopy of that passport that Singh
has provided in these proceedings similarly lacks any signs
of inspection or admission. The I-213 also stated that Singh
had been admitted without inspection, as did the I-130 peti-
tion for an alien relative that Singh's then-wife filed on his
behalf in 2001. These documents strongly suggest that Singh
did not pass through immigration and customs when he ar-
rived in the United States. The Board therefore did not err by
finding that Singh did not establish by clear and convincing
evidence that he was inspected and admitted into the United
States.

We therefore DENY Singh's petition for review.