NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0355n.06

No. 18-3087

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LEONARDO NOE MORALES-GONZALEZ;
SHERLYN SACAY MORALES-DE LEON,

    Petitioners,

v.

JEFFERSON B. SESSIONS, III, U.S. Attorney
General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Jul 17, 2018
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

Before: SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Leonardo Morales-Gonzalez and his daughter Sherlyn Morales-De Leon argue that the Board of Immigration Appeals erred when it affirmed an immigration judge's decision denying their motion to reopen their removal proceedings. We reject their arguments and deny their petition for review.

I.

In November 2016, Border Patrol agents arrested Morales-Gonzalez and Morales-De Leon—citizens of Guatemala—as they crossed the border from Mexico into the United States. The next day, an agent gave Morales-Gonzalez two forms, one for him and one for his daughter, who was then three years old. Those forms (entitled "Notice to Appear") explained that he and his daughter were required to attend a hearing with an immigration judge, that the immigration

court would send a notice of the time and place of the hearing to their address, and that he was required to tell the court if they changed their address. The forms also noted that the judge could order them removed if they failed to show up for their hearing. Morales-Gonzalez signed each form twice: once to "request an immediate hearing" and again to acknowledge that he had been given the form in person by an agent who had explained—in Spanish—"the consequences of failure to appear" for the hearing. Morales-Gonzalez told an immigration officer that, once he and his daughter were released, their address would be 300 Dixie Drive, Cleveland, Tennessee.

The government then released Morales-Gonzalez and Morales-De Leon and the immigration officer mailed a letter to their address. The letter recited that their hearing would be held at an immigration court in Memphis, Tennessee and that Morales-Gonzalez must "report any changes in [their] address" to that court. A month later, the immigration court sent another letter— also to the address on Dixie Drive—that stated the date and time of their hearing. That letter was returned to the court as undeliverable. Morales-Gonzalez and his daughter thereafter failed to appear for their hearing, and the immigration judge ordered them removed from the United States.

Morales-Gonzalez and Morales-De Leon later filed a motion to reopen their removal proceedings. The immigration judge denied the motion, and the Board of Immigration Appeals affirmed without a written opinion. This petition for review followed.

II.

The Board affirmed the immigration judge without a written opinion, so we review the judge's decision directly for an abuse of discretion. *See Denko v. I.N.S.*, 351 F.3d 717, 723 (6th Cir. 2003).

A.

Morales-Gonzalez and Morales-De Leon argue that the immigration judge should have reopened their removal proceedings because, they say, they never received notice of their hearing. Under the Immigration and Nationality Act, an immigration judge may reopen those proceedings if (among other things) the alien did not receive proper written notice of their hearing. *See* 8 U.S.C. § 1229a(b)(5)(C)(ii). But "proceedings will not be reopened" if the alien "fails to keep his or her address current with the Immigration Court" and as a result "fails to receive a hearing notice." *Sanchez v. Holder*, 627 F.3d 226, 231, 233 (6th Cir. 2010) (interpreting 8 U.S.C. § 1252b(c), the predecessor to § 1229a(b)(5)(B), and holding that the two statutes are "materially the same" and "similarly construed").

Here, the immigration court sent notice of the date and time of the removal hearing to the address that Morales-Gonzalez himself provided. By that time, however, he and his daughter had moved to a new address without telling the court. The reason why they never received the notice, therefore, is that Morales-Gonzalez failed to keep his address current with the immigration court. Hence he cannot reopen his or his daughter's removal proceedings based on a lack of notice.

Morales-Gonzalez counters that no one told him to keep his address current with the immigration court. But even the premise of that contention is mistaken. The immigration judge found that Morales-Gonzalez had received a copy of the notices to appear, which instructed him to "notify the Immigration Court immediately . . . whenever you change your address." That finding is supported by substantial evidence: Morales-Gonzalez signed the notices to appear, which recited that he had been personally served with them and that "[he] will be provided with a copy of this form"; a border patrol agent also signed the notices; and nowhere in Morales-

Gonzalez's affidavit does he dispute that he received the notices to appear. *See Gaye v. Lynch*, 788 F.3d 519, 525 (6th Cir. 2015).

Morales-Gonzalez next asserts that he did not know where to send his new address because no one told him which immigration court was handling his case. When the government sends a letter to the last address provided by the alien, however, then the alien is presumed to have received it. *See Thompson v. Lynch*, 788 F.3d 638, 643 (6th Cir. 2015). Here, the immigration court sent Morales-Gonzalez a letter saying that his hearing would be held in Memphis and that he should send any changes in his address to that court. The court sent that letter to the Dixie Drive address— which was the last address provided by Morales-Gonzalez—and it was not returned as undeliverable. Thus we presume that Morales-Gonzalez received it and that he had been told to update his address with the immigration court in Memphis.

Finally, Morales-Gonzalez says that—even though he moved from the Dixie Drive address—he nonetheless met the Act's requirement to provide an address where he and his daughter could "be contacted." *See* 8 U.S.C. § 1229(a)(1)(F)(i). But that argument fails on its own terms, since the person residing at Dixie Drive refused to receive Morales-Gonzalez's mail. So that address was not one at which he could "be contacted." *See id.*

## B.

Morales-Gonzalez next argues that he was deprived of due process because no one explained his "rights and obligations" to him in Spanish. Due process requires the government to provide notice that is reasonably calculated, under the circumstances, to inform an alien of the proceedings to remove him from the United States. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003) (citation omitted). Personal service of written notice to a non-English speaker

satisfies due process by giving the recipient an opportunity to have the notice translated. *See Singh v. Holder*, 749 F.3d 622, 626 (7th Cir. 2014).

A border patrol agent personally served Morales-Gonzalez with two notice-to-appear forms, which contained detailed information about his and his daughter's removal proceedings. Moreover, the agent explained to Morales-Gonzalez—in Spanish—that the judge could order him and his daughter removed if they failed to show up for their hearing. Thus the government provided notice—*i.e.*, personal service of the notice-to-appear forms and the verbal warning—reasonably calculated to inform Morales-Gonzalez and Morales-De Leon of their rights and obligations during the removal proceedings. *See id.*

Morales-Gonzales contends that, under the rule of lenity, the Act should be interpreted to require the government to provide written notice in the alien's native language. Yet Morales-Gonzalez identifies nothing in particular in the Act's text that is ambiguous. Hence this argument fails. *See Kawashima v. Holder*, 565 U.S. 478, 489 (2012).

Finally, Morales-Gonzalez and Morales-De Leon argue that the Board violated its own regulation—8 C.F.R. § 1003.1(e)—when it assigned their appeal to a single member, rather than to a three-member panel. That regulation generally requires the Board to assign all cases to a single member, but allows the Board to assign cases to a panel under six circumstances. *See* 8 C.F.R. § 1003.1(e)(6). Even when one or more of those circumstances are present, however, assignment to a panel is "not mandatory." *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 141 (6th Cir. 2016). Thus the Board did not violate the regulation when it assigned the petitioners' appeal to a single member.

The petition for review is denied.