*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

GUILEBALDO RAMOS SANCHEZ,

                    *Petitioner,*

     *v.*

ERIC H. HOLDER, JR., Attorney General,

                    *Respondent.*

No. 09-3866

On Petition for Review from the
Board of Immigration Appeals.
No. A074 743 414.

Decided and Filed:  December 6, 2010

Before:  DAUGHTREY, GILMAN, and McKEAGUE, Circuit Judges.

—————————————

**COUNSEL**

**ON BRIEF:**  Caridad Pastor Cardinale, PASTOR & ASSOCIATES, P.C., Troy, Michigan, for Petitioner.  Todd J. Cochran, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

—————————————

**OPINION**

—————————————

RONALD LEE GILMAN, Circuit Judge.  Several years after entering the country illegally, Guilebaldo Ramos Sanchez was apprehended by the Immigration and Naturalization Service (INS), which then initiated deportation proceedings against him. Approximately a year later, a hearing notice was sent to Sanchez by certified mail to the address that he had provided the INS.  The notice was returned by the Postal Service with the stamp "undeliverable as addressed—forwarding order expired."

1

Sanchez failed to appear at the scheduled hearing and was ordered deported *in absentia*. Nearly 11 years later, immigration officials arrested Sanchez, who then moved to reopen his deportation proceedings. The Immigration Judge (IJ) denied his motion, reasoning that Sanchez had failed to establish reasonable cause for failing to appear at his hearing and that his motion was untimely.

Sanchez appealed to the Board of Immigration Appeals (BIA). The BIA dismissed his appeal, concluding that Sanchez had failed to rebut the strong presumption of effective service that arose because the hearing notice was sent by certified mail to the address that Sanchez had provided. In addition, the BIA agreed with the IJ's determination that Sanchez's motion to reopen was untimely. For the reasons set forth below, we **DENY** Sanchez's petition for review.

## I. BACKGROUND

The relevant facts in this case are undisputed. Sanchez is a citizen of Mexico who entered the United States illegally in April 1991. He was arrested in May 1996 by an agent of the INS and personally served with an Order to Show Cause (OSC), which charged that he was deportable. (Enforcement functions of the INS have since been transferred to the Department of Homeland Security by § 441 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.) The OSC informed Sanchez, among other things, that (1) a deportation hearing would be scheduled before an IJ; (2) he must provide a current address and notify the Immigration Court of any address changes; (3) a notice containing the time and place of the deportation hearing would be mailed to him at the last address he provided; and (4) if he failed to appear at the hearing, the IJ could order Sanchez deported *in absentia*. Sanchez provided an address of 316 S. Dean Street, Adrian, Michigan 49221.

The INS initiated deportation proceedings against Sanchez in March 1997 by filing the OSC in Immigration Court. *See* 8 C.F.R. 1003.14(a) (providing that immigration proceedings begin "when a charging document is filed with the Immigration Court"). In May 1997, the Immigration Court mailed Sanchez a hearing notice by

certified mail to the Dean Street address, informing him that his deportation hearing was scheduled for July 8, 1997. The notice was returned to the Immigration Court with the Postal Service stamp "undeliverable as addressed—forwarding order expired." When Sanchez did not appear for the hearing, the IJ ordered him deported *in absentia*.

On April 2, 2008, Sanchez was arrested by Immigration and Customs Enforcement agents. He filed a motion in Immigration Court two days later to reopen his deportation proceedings. Sanchez argued that because he did not receive the hearing notice, he was entitled to reopening under § 242B(c)(3)(B) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1252b (1996). He further asserted that he was not at fault for failing to receive the notice because he was still living at the Dean Street address when the notice was sent. The IJ denied the motion to reopen in May 2008, finding that (1) the hearing notice was properly sent by certified mail to the Dean Street address that Sanchez had provided, and (2) the motion was untimely under 8 C.F.R. § 1003.23(b)(4)(iii) because Sanchez filed it more than 180 days after entry of the *in absentia* deportation order.

Sanchez appealed the IJ's ruling to the BIA. In addition to repeating the arguments that he made to the IJ, Sanchez noted that the hearing notice was returned to the Immigration Court as undeliverable. He argued that his motion was therefore timely because a motion to reopen an *in absentia* deportation order may be filed at any time if the alien demonstrates that he did not receive proper notice. *See* 8 U.S.C. § 1252b(c)(3)(B).

The BIA affirmed the IJ's decision. Although the hearing notice was returned undelivered by the Postal Service, the BIA concluded that Sanchez "received notice pursuant to *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995)." The BIA reasoned that, under *Grijalva*, a hearing notice sent by certified mail to the alien's last known address establishes "by clear, unequivocal, and convincing evidence that the alien received 'written notice' of the deportation hearing within the meaning of [8 U.S.C. § 1252b(c)(1)]. . . . [T]here 'is no requirement that the certified mail return receipt be signed by the alien or a responsible person at his address to effect service.'" (Quoting

*Grijalva*, 21 I. & N. at 34). The BIA further reasoned that "where a notice of hearing is sent through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." (Citing *Grijalva*, 21 I. & N. Dec. at 37.)

In this case, the record shows that the Immigration Court sent the hearing notice by certified mail to Sanchez's Dean Street address. Sanchez never notified the Immigration Court of any address changes. Although Sanchez contended that he was living at the Dean Street address when the hearing notice was sent, he submitted no proof to support his claim. Under the rules set forth in *Grijalva*, the BIA determined that Sanchez had failed to rebut the presumption that he had received proper notice of his hearing. The BIA therefore dismissed Sanchez's appeal.

Sanchez filed a petition for review and a motion to stay removal with this court in July 2009. In October 2009, we granted his motion to stay removal pending the outcome of his petition.

## II.  ANALYSIS

### A.     Standard of review

Where the BIA provides its own reasoning for denying a motion to reopen rather than summarily affirming the IJ, we review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Our review is conducted under the abuse-of-discretion standard. *Acquaah v. Holder*, 589 F.3d 332, 334 (6th Cir. 2009). "The BIA abuses its discretion when it acts arbitrarily, irrationally[,] or contrary to law." *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003). If the BIA is interpreting a statute that it administers and the statute is silent or ambiguous on a specific issue, then we defer to the BIA's interpretation of the statute so long as the interpretation is reasonable. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).

**B.    Governing law**

The governing law in this case is found in 8 U.S.C. § 1252b (1996) (also referred to as INA § 242B), which was repealed by § 308(b)(6) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-615 (IIRIRA).  Provisions markedly similar to § 1252b now appear in 8 U.S.C. §§ 1229 and 1229a.  These successor statutes use the term *removal* instead of *deportation* because of a change in the statutory language wrought by IIRIRA.  *See Garcia-Echaverria v. United States*, 376 F.3d 507, 509 n.1 (6th Cir. 2004).  For consistency, we will continue to use the word *deportation* when discussing both the past and present statutes.

Although § 1252b was repealed by IIRIRA, this section continues to govern "an alien who is in . . . deportation proceedings as of [IIRIRA's] effective date," which was April 1, 1997.  *See* IIRIRA §§ 308(b)(6), 309(a), (c)(1).  Sanchez's deportation proceedings began on March 8, 1997 when the INS filed the OSC pertaining to Sanchez with the Immigration Court.  *See* 8 C.F.R. § 1003.14(a).  Now-repealed § 1252b therefore governs this appeal.

**C.    Discussion**

The BIA denied Sanchez's motion to reopen on the grounds that (1) he received proper notice under 8 U.S.C. § 1252b(c)(3)(B), and (2) his motion was untimely.  On appeal, Sanchez challenges both of these grounds.  We analyze each in turn below.

*1.    Denial of motion to reopen—the notice issue*

The first issue in this case is whether the BIA abused its discretion when it denied Sanchez's motion to reopen deportation proceedings on the grounds that Sanchez had received proper notice within the meaning of 8 U.S.C. § 1252b(c)(3)(B). An alien who fails to attend his deportation hearing after the government has provided proper written notice of the time and place of the hearing is subject to being deported *in absentia* if the government proves by clear, unequivocal, and convincing evidence that he is deportable.  8 U.S.C. § 1252b(c)(1).  (Sanchez challenges the propriety of the

notice, but does not question the propriety of the IJ entering the *in absentia* deportation order under 8 U.S.C. § 1252b(c)(1).)

With exceptions not relevant here, a hearing notice is sufficient if sent by certified mail to the most recent address provided by the alien. 8 U.S.C. § 1252b(a)(2), (c)(1). There is no requirement that the alien actually receive the notice before an Immigration Court can order the alien deported *in absentia*. *Arrieta v. INS*, 117 F.3d 429, 431 (9th Cir. 1997); *in re Grijalva*, 21 I. & N. Dec. 27, 33-34 (BIA 1995).

The successor statutes to § 1252b—which are materially the same in terms of entering *in absentia* deportation orders (*compare* 8 U.S.C. § 1252b(a)(1)-(2), (c)(1)-(2) *with* 8 U.S.C. §§ 1229(a)(1)-(2) and 1229a(b)(5)(A)-(B))—have been similarly construed. *See Lopes v. Gonzales*, 468 F.3d 81, 84 (2d Cir. 2006) ("The INS need not demonstrate that the alien actually received notice in order to trigger the non-discretionary entry of an *in absentia* [deportation] order . . . ."); *Joshi v. Ashcroft*, 389 F.3d 732, 736 (7th Cir. 2004) ("The fact that the intended recipient did not actually receive notice does not contradict evidence that delivery was attempted and the notice requirement thus satisfied."); *Gurung v. Ashcroft*, 371 F.3d 718, 721 (10th Cir. 2004) (concluding that "the INS does not have to prove actual receipt of notice before holding an *in absentia* proceeding") (italics added). In sum, initiating deportation proceedings *in absentia* does not depend on whether the alien actually receives the notice, but rather on whether the government properly mails the notice according to the statute. *Callin v. Holder*, 333 F. App'x 926, 928 (6th Cir. 2009).

The success of an alien's motion to reopen the *in absentia* proceedings similarly hinges on the concept of constructive receipt. As set forth in 8 U.S.C. § 1252b(c)(3), "an [*in absentia* deportation] order may be rescinded . . . upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice." But properly mailing the hearing notice according to the statute—i.e., by sending the notice to the last address provided by the alien either by certified mail (required by § 1252b) or by regular mail (allowed by the current statute)—creates a presumption that notice was received by the alien. *See Ba v. Holder*, 561 F.3d 604, 607 (6th Cir. 2009).

To demonstrate that notice was not received under § 1252b(c)(3)(B)—the standard for reopening—an alien must rebut the presumption of receipt arising from the proper mailing of the hearing notice. *Stewart v. Holder*, 362 F. App'x 518, 521-23 (6th Cir. 2010). Notice sent by certified mail creates a strong presumption of receipt. *Id.* at 521.

This strong presumption was first articulated by the BIA in *Grijalva*. 21 I. & N. Dec. at 37. The Immigration Court in *Grijalva* sent notice of a deportation hearing by certified mail as required by 8 U.S.C. §1252b(a)(2). When the Immigration Court received the certified-mail return receipt, the receipt indicated that the mail was unclaimed despite several attempts to deliver the mail to the respondent. Because the respondent failed to appear at the hearing, the IJ held the hearing *in absentia* and ordered that the respondent be deported. The respondent then filed a motion to reopen, claiming that he never received the hearing notice. His motion was denied by the IJ, who found that "the respondent was properly notified of the hearing . . . because the notice, though unclaimed, was sent to him by certified mail [at] his last known address." *Id.* at 29.

On appeal, the BIA concluded "that the Immigration Judge properly denied the motion to reopen because the respondent failed to demonstrate that he did not receive notice of the deportation proceeding." *Id.* at 36. The BIA also found that "where service of a notice of a deportation proceeding is sent by certified mail through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises." *Id.* at 37. To overcome this presumption and establish nonreceipt, an alien "must present substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery or that nondelivery was not due to the [alien's] failure to provide an address where he [or she] could receive mail." *Id.*

The strong presumption of receipt set forth in *Grijalva* has received support in both the Sixth Circuit and in several of our sister circuits. Although we have found no Sixth Circuit case that squarely addresses whether the strong presumption of receipt in

*Grijalva* is the law in this circuit for notices sent by certified mail, several Sixth Circuit cases analyzing notices sent by regular mail have recognized both the presumption of receipt that arises with proper mailing and that this presumption is even stronger for notices sent by certified mail. *See Ba*, 561 F.3d at 607-08; *Stewart*, 362 F. App'x at 521; *Callin*, 333 F. App'x at 928; *Mecaj v. Mukasey*, 263 F. App'x 449, 451 (6th Cir. 2008). A number of other circuits have also recognized both of these principles. *See Sembiring v. Gonzales*, 499 F.3d 981, 986-87 (9th Cir. 2007); *Alrefae v. Chertoff*, 471 F.3d 353, 358-59 (2d Cir. 2006); *Nibagwire v. Gonzales*, 450 F.3d 153, 156-57 (4th Cir. 2006); *Maknojiya v. Gonzales*, 432 F.3d 588, 589 (5th Cir. 2005); *Joshi v. Ashcroft*, 389 F.3d 732, 735 (7th Cir. 2004); *Ghounem v. Ashcroft*, 378 F.3d 740, 744-45 (8th Cir. 2004).

At least two sister circuits have explicitly applied *Grijalva*'s strong presumption of receipt for notices sent by certified mail, requiring the alien to rebut that presumption in order to establish the nonreceipt necessary to reopen deportation proceedings. *See Arrieta v. INS*, 117 F.3d 429, 432 (9th Cir. 1997); *Fuentes-Argueta v. INS*, 101 F.3d 867, 871-72 (2d Cir. 1996). Similarly, the Third Circuit ruled that "*Grijalva*'s strict evidentiary standard—a strong presumption—applies only when a notice from an Immigration Court or the INS (or Department of Homeland Security) is sent by *certified* mail, and that a weaker presumption of receipt applies when such a notice is sent by *regular* mail." *Santana Gonzalez v. Att'y Gen. of the United States*, 506 F.3d 274, 279 (3d Cir. 2007) (emphasis in original).

The strong presumption of receipt for certified mail set forth in *Grijalva* is based on the notion that certified mail possesses guarantees of effective delivery beyond those of normal mail: "We think it appropriate that a stronger presumption should apply when certified mail is used to send notice because of the extra assurances of effective delivery included in the United States Postal Service's certified mail system." *Ghounem*, 378 F.3d at 744; *accord Santana Gonzalez*, 506 F.3d at 278; *Nibagwire*, 450 F.3d at 156-57. "When certified mail is used, the Postal Service's delivery efforts are documented: there is a return receipt or written proof of attempted delivery and notification to the

addressee of certified mail." *Nibagwire*, 450 F.3d at 156. This paper trail shows mailing, and either receipt or nonreceipt, thereby supplying "documentary evidence from the Postal Service." *Grijalva*, 21 I. & N. Dec. at 37; *accord Semibring*, 499 F.3d at 987.

The close fit between the evidence required to rebut the presumption of receipt and the evidence produced from using certified mail led one circuit to observe that *Grijalva*'s evidentiary requirements "ma[ke] perfect sense in connection with certified mail." *Salta v. INS*, 314 F.3d 1076, 1080 (9th Cir. 2002). And because certified mail is very likely to be delivered to the address that it is mailed to, the BIA's interpretation of § 1252b(c)(3)(B) is a reasonable one. We therefore defer to that interpretation. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (holding that the Ninth Circuit erred by failing to defer to the BIA's reasonable interpretation of the INA); *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005) ("[T]his [c]ourt . . . must defer to the BIA's reasonable interpretations of the INA.").

Of particular significance here is the principle that proceedings will not be reopened if the alien fails to receive a hearing notice because the alien's own conduct made him or her unreachable: "An alien should not be able to make himself unreachable, and then later ask to have his case reopened because he did not receive notice." *Sabir v. Gonzales*, 421 F.3d 456, 459 (7th Cir. 2005); *accord Mota-Roman v. Holder*, 331 F. App'x 379, 384 (6th Cir. 2009); *Ly v. Holder*, 327 F. App'x 616, 619, 621, 624 (6th Cir. 2009). Aliens make themselves unreachable if they fail to notify the appropriate Immigration Court of changes to their address as required by 8 U.S.C. § 1252b(a)(F)(ii). *Mota-Roman*, 331 F. App'x at 384; *Ly*, 327 F. App'x at 619, 621, 624.

This rule is rooted in the statute because the effect of 8 U.S.C. § 1252b(a)(2) is that the actual receipt of a hearing notice is not required if an alien fails to keep his or her address current with the Immigration Court. Without this rule, aliens could frustrate the notice requirement by simply moving, not updating their address, and then using the paper trail of the certified-mail system to prove that they did not receive the notice. This court prevented the aliens in *Mota-Roman* and *Ly* from frustrating the successor statutes

to § 1252b in precisely this manner. The aliens in those cases were able to conclusively prove that they did not actually receive the hearing notice because the notices were returned as undeliverable by the Postal Service. *Mota-Roman*, 331 F. App'x at 381; *Ly*, 327 F. App'x at 618. Despite this proof of nonreceipt, this court held that they could not reopen their immigration proceedings because the nonreceipt was caused by the aliens moving without updating their respective addresses. *Mota-Roman*, 331 F. App'x at 384; *Ly*, 327 F. App'x at 624.

The alien has the burden of demonstrating that the address to which the hearing notice is sent is current. *Ba v. Holder*, 561 F.3d 604, 607 (6th Cir. 2009). In *Ba*, the alien argued that her motion to reopen should be granted because she did not receive the hearing notice. *Id.* at 605. The notice was sent to Ba by regular mail and was not returned to the Immigration Court as undeliverable, so there was no conclusive proof of receipt or nonreceipt. Although Ba's affidavit stated that she did not receive notice, it failed to allege that she was living at her designated address when the Immigration Court sent the notice. So her claimed failure to receive notice could have been due to her having moved without keeping her address current. The BIA therefore held that she could not satisfy the burden of establishing failure to receive notice: "Unless she resided at that address, she had a duty to inform the Immigration Court of any change of address and nothing in the record indicated that she did so." *Id.* at 606.

Upon review, this court reasoned that circumstantial evidence and Ba's affidavit supported the conclusion that she did not actually receive the hearing notice. *See id.* at 607-08. But she could not prove that she failed to receive notice within the meaning of the successor statute to § 1252b(c)(3)(B)—which is materially the same in terms of reopening *in absentia* deportation orders, *compare* 8 U.S.C. § 1252b(c)(3)(B) *with* 8 U.S.C. 1229a(b)(5)(C)(ii)—until she satisfied her burden of demonstrating that the address to which the hearing notice was sent was where she currently could receive mail (the "current-address burden"). *Id.* at 607-08. The court explicitly linked Ba's current-address burden to the requirement that she rebut the presumption of receipt arising from properly mailing the hearing notice. *Id.* Moreover, the language the court

employed when discussing Ba's current-address burden indicates that this burden would be heightened where certified mail is used: "*At the very least*, [the alien] bears the burden, *even when service is made by regular mail*, to demonstrate that the address to which the notice was sent was current." *Id*. at 607 (emphasis added).

The strong presumption of receipt for certified mail in *Grijalva* contains just such a heightened burden. *Grijalva*, 21 I. & N. Dec. 27, 37 (BIA 1995). For the alien to overcome the strong presumption of receipt, he or she "must present substantial and probative evidence . . . demonstrating that . . . *nondelivery was not due to the respondent's failure to provide an address where he [or she] could receive mail*." *Id.* (emphasis added). The BIA also emphasized that this substantial and probative evidence must be presented to the IJ, and that the BIA "ordinarily will not consider any previously available evidence first proffered on appeal." *Id*. In sum, for an alien to demonstrate the absence of notice under § 1252b(c)(3)(B), the alien must establish not only the lack of actual notice, but also that the lack of actual notice was due to some reason other than the alien's failure to provide a current address.

Because Sanchez has not shown that his lack of notice was due to some reason other than his failure to provide a current address, he cannot reopen his proceedings. *See Grijalva*, 21 I. & N. Dec. at 37. Sanchez contends, however, that he was still residing at the Dean Street address when the Immigration Court mailed the notice. But he never presented *any* evidence to support this claim, let alone substantial and probative evidence. *Id.* Moreover, the postal message on the envelope of the returned notice ("undeliverable as addressed—forwarding order expired") suggests that Sanchez's claim is false. If Sanchez still lived at that address when the hearing notice was sent, then there would have been no forwarding order, let alone one that had expired. The record thus indicates that not only has Sanchez failed to prove that he still resided at the Dean Street address when the Immigration Court mailed the notice, but that he likely has no such proof.

Sanchez's rebuttal is unpersuasive. He specifically relies on *Lopes v. Gonzales*, 468 F.3d 81 (2d Cir. 2006), but *Lopes* is distinguishable. *Lopes* involved an alien's

claim that he failed to receive a hearing notice sent by regular mail. Thus *Lopes*, unlike Sanchez's case, does not involve the stronger presumption of receipt applicable to notice sent by certified mail. Nor was there any indication that the alien in *Lopes* made himself unreachable. Indeed, the fact that the alien received the IJ's deportation order, which was sent to the same address as the earlier notice of hearing, provided evidence that the alien did live at the address to which the notice of hearing was sent. This further distinguishes *Lopes* from this case, both because Sanchez offered no proof that he lived at the Dean Street address when the hearing notice was sent and because the postal message on the returned envelope suggests that Sanchez made himself unreachable by moving without keeping his address current.

Sanchez's reliance on *in re G-Y-R*, 23 I. & N. Dec. 181 (BIA 2001), is likewise misplaced. In *G-Y-R*, the BIA simply held that an alien cannot be ordered deported *in absentia* unless the alien has received a Notice To Appear. That document, which is the successor to § 1252b's OSC, explains (1) that the alien is in deportation proceedings, and (2) "the particular address obligations associated with [deportation] proceedings." *G-Y-R*, 23 I. & N. Dec. at 183, 192. In this case, because Sanchez undisputedly received the OSC—which explained to him the disclosures contained in both (1) and (2) above—he could be ordered deported under the logic of *G-Y-R*.

In sum, we are unpersuaded by the authorities cited on Sanchez's behalf. We therefore conclude that the BIA did not abuse its discretion in denying his motion to reopen deportation proceedings on the basis of lack of notice.

### 2.     *Denial of motion to reopen—the timeliness issue*

The second issue before us is whether the BIA abused its discretion in denying Sanchez's motion to reopen on the basis that it was untimely. Under 8 C.F.R. § 1003.23(b)(4)(iii)(A)(2), a motion to reopen deportation proceedings that resulted in an *in absentia* deportation order can be filed at any time if the alien demonstrates that he or she did not receive proper notice. But because Sanchez has failed to demonstrate that his lack of notice was due to some reason other than his failure to provide his current address, his motion to reopen does not fall within the ambit of 8 C.F.R.

§ 1003.23(b)(4)(iii)(A)(2). *See* Part II.C.1. above. The other relevant BIA regulation addressing the timeliness of motions to reopen specifies that these motions can be filed within 180 days of the IJ's decision if the alien demonstrates that failure to appear was because of exceptional circumstances. 8 C.F.R. § 1003.23(b)(4)(iii)(A)(1). But Sanchez has made no attempt to show exceptional circumstances, presumably because his motion to reopen was filed more than 10 years after the IJ's *in absentia* deportation order. Sanchez's motion is thus untimely.

## III. CONCLUSION

For all the reasons set forth above, we **DENY** Sanchez's petition for review.