NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0345n.06

Nos. 17-4277/4278

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MUKESHKUMAR VENABHAI PATEL (17-4277); URVASHI MUKESH PATEL (17-4278), | ) ) ) ) | **FILED**<br>Jul 13, 2018<br>DEBORAH S. HUNT, Clerk |
| **Petitioners,** | ) ) |  |
| v. | ) ) |  |
| JEFFERSON B. SESSIONS, III, Attorney General | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF |
| **Respondent.** | ) ) ) | IMMIGRATION APPEALS |
|  |  | **OPINION** |

Before: BATCHELDER, MOORE, and LARSEN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** This immigration case centers around a typographic error from 1997. Immigration proceedings were commenced against Mukeshkumar Venabhai Patel ("Mr. Patel") and Urvashi Mukesh Patel ("Mrs. Patel") (collectively, "the Patels") early that year after they were discovered to have entered the country with false passports. The address for the Patels that immigration officials recorded was missing an "i," however, and two subsequent hearing notices sent to that address were returned without delivery. After the Patels failed to appear for the hearings, deportation orders were issued in their absence. In 2016, the Patels filed motions to reopen the proceedings against them, claiming insufficient notice. An Immigration Judge ("IJ") denied their motions, and the Board of Immigration Appeals ("BIA") dismissed their appeals and then denied further motions to reopen and reconsider. The Patels now

petition this court to review those most recent denials by the BIA. In light of a significant ambiguity in the BIA's stated rationale, we **VACATE** and **REMAND**.

## I. BACKGROUND

The facts of this case are not materially in dispute. The Patels are citizens of India. A.R. I at 2070 (Record of Deportable Alien at 1); A.R. II at 403 (Record of Deportable Alien at 1).[1] They entered the United States using false passports in 1996. *Id.* On February 28, 1997, they encountered agents of what was then the Immigration and Naturalization Service ("INS")—now the Department of Homeland Security—at a bus station in Detroit, Michigan. *Id.* Upon questioning, they revealed the false entry to the INS. *Id.* The INS accordingly began to process the Patels for potential deportation. *Id.*

Although Mr. Patel "stated that he underst[ood] verbal and written English" during the encounter, the INS also enlisted a translator; the two of them helped to translate for Mrs. Patel. A.R. I at 2071 (Record of Deportable Alien at 2). With the help of the translator, the INS informed the Patels of their rights and presented each of them personally that day with an Order to Show Cause and Notice of Hearing ("OSC") that would be filed with the Immigration Court and thus formally commence deportation proceedings against them. *See id.*; A.R. I at 2081–85 (OSC); A.R. II at 415–19 (OSC). The Patels were told, and the OSCs reiterated, that the Patels were obligated by law to keep the INS informed of their current address. A.R. I at 2071 (Record of Deportable

---

[1]Because this consolidated petition for review involves two administrative records, we refer to the record in the first-filed petition, Mr. Patel's (No. 17-4277), as "A.R. I," and the record in the second-filed petition, Mrs. Patel's (No. 17-4278), as "A.R. II." Where, as here, we cite to parallel pages in the records, we use "*id.*" in a subsequent citation to refer back to both of them.

Alien at 2); A.R. I at 2084 (OSC at 4); A.R. II at 418 (OSC at 4); *see also* 8 U.S.C. § 1252b(a)(1)(F) (1996).[2] The Patels signed their respective OSCs. A.R. I at 2085 (OSC at 5); A.R. II at 419 (OSC at 5).

The OSCs, however, had a glitch. Although the Patels assertedly gave their address as "4448 Mobile Hwy," the location of a motel on a major thoroughfare in Pensacola, Florida,[3] the INS recorded the address on the OSCs as "4448 *Moble* Hwy." A.R. I at 2081 (OSC at 1); A.R. II at 415 (OSC at 1) (emphasis added). When the INS sent hearing notices (addressed to the Patels at the same misspelled address) via certified mail a few months later (in June and July), the notices came back stamped "Attempted, Not Known." A.R. I at 1853 (Certified Mail Return); A.R. II at 402, 411 (Certified Mail Returns); *see* A.R. I at 1849 (June 1997 Notice); A.R. II at 397 (July 1997 Notice). And when the Patels failed to appear at the resulting hearings in October and November 1997, the IJ assigned to their case issued deportation orders against them. A.R. I at 1855 (Oct. 1997 IJ Order); A.R. II at 396 (Nov. 1997 IJ Order). The resulting deportation orders *do* appear to have been successfully delivered to the Patels. A.R. I at 1763 (Feb. 2016 IJ Order at 2); A.R. II at 84 (Feb. 2016 IJ Order at 2).

---

[2]Because these proceedings were commenced (upon filing of the OSC with the Immigration Court) prior to the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, then-operative law continues to apply. *See* IIRIRA § 309(a), (c)(1); *see also id.* § 308(b)(6) (repealing § 1252b); *Sanchez v. Holder*, 627 F.3d 226, 230 (6th Cir. 2010).

[3]The Patels' luggage tag seems to confirm that their address was indeed "4448 Mobile Hwy." A.R. I at 1839 (Luggage Tag).

On January 19, 2016, the Patels filed motions to reopen their proceedings on the grounds of deficient notice. A.R. I at 1819–30 (Jan. 2016 Mot. to Reopen); A.R II at 126–39 (Jan. 2016 Mot. to Reopen). On February 24, 2016, the IJ assigned to their cases concluded that the Patels had "failed to rebut the presumption of effective service by certified mail" established by prior precedents. A.R. I at 1768 (Feb. 2016 IJ Order at 7); A.R. II at 89 (Feb. 2016 IJ Order at 7). Accordingly, the IJ concluded, they had "not established that [their] inability to receive notice was not due to [their] own failure to provide a current and correct address, regardless of the initial" typo. *Id.*

The Patels appealed to the BIA, which dismissed their appeals on April 18, 2017. A.R. I at 1709 (Apr. 2017 BIA Decision at 1); A.R. II at 6 (Apr. 2017 BIA Decision at 1). In functionally identical two-page opinions, the BIA reasoned "that the postal service would determine that 4448 Moble Highway was intended to mean 4448 Mobile Highway" and stated that the Patels had "not provided any evidence establishing that [they were] actually residing at the Mobile Highway address or entitled to receive mail there." A.R. I at 1709–10 (Apr. 2017 BIA Decision); A.R. II at 6–7 (Apr. 2017 BIA Decision).

The Patels then filed motions urging the BIA to reconsider its previous dismissal and (again) to reopen proceedings. *See, e.g.*, A.R. I at 134–40 (May 2017 Mot. to Reopen and Reconsider). The BIA denied those motions on November 13, 2017. A.R. I at 3 (Nov. 2017 BIA Decision); A.R. II at 3 (Nov. 2017 BIA Decision). With regard to the Patels' motions for reconsideration, the BIA stated that it "remain[ed] persuaded" that the Patels had not shown that they were impermissibly denied notice. A.R. I at 3 (Nov. 2017 BIA Decision); A.R. II at 3 (Nov.

2017 BIA Decision). With regard to the Patels' motions for reopening, the BIA stated that the Patels had "not demonstrated that the regulatory exceptions to the time and numerical limitations on motions to reopen" were applicable and that it did "not find exceptional circumstances that would warrant reopening . . . sua sponte." *Id.* These consolidated petitions for review timely followed.

## II. DISCUSSION

### A. Jurisdiction

The parties agree that we have jurisdiction under 8 U.S.C. § 1252 at least to consider this petition for review and to adjudicate the BIA's denial of the Patels' motion for reconsideration. Pet'rs' Br. at 1–2; Resp't's Br. at 1–2, 8–10. The Government argues that we lack jurisdiction to review the BIA's denial of the Patels' latter motion to reopen, Resp't's Br. at 9, given our prior "hold[ing] that we lack jurisdiction to review the BIA's denial of [a] petitioner's motion to reopen *sua sponte*," *Gor v. Holder*, 607 F.3d 180, 188 (6th Cir. 2010). But this interpretation of the present case's posture puts the cart before the horse. Indeed, the BIA's denial was only properly on a sua sponte basis *if* the BIA was correct in its immediately preceding conclusion that statutory and regulatory notice-based exceptions—which, if applicable, would have freed the Patels from the otherwise-operative time and number limits on motions to reopen—did not in fact apply. *See* 8 U.S.C. § 1252b(c)(3)(B); 8 C.F.R §§ 1003.2(c)(3), 1003.23(b)(4)(iii)(A)(2); A.R. I at 3 (Nov. 2017 BIA Decision); A.R. II at 3 (Nov. 2017 BIA Decision). In other words, if the Patels were in fact impermissibly denied notice, then the Patels were not subject to the time and number limits on motions to reopen. And if they were not in fact subject to those limits, then the BIA's conclusion

that it was to consider the question only as a sua sponte matter was itself a legal error. We therefore have jurisdiction to consider, with reference to the BIA's denials of both types of motions by the Patels, the crux of this case: whether the Patels were in fact impermissibly denied notice in light of the mistyped address and undelivered mailings.

## B. Standard of Review

We review the BIA's denial of a motion to reopen or a motion to reconsider for abuse of discretion. *Alizoti v. Gonzales*, 477 F.3d 448, 451 (6th Cir. 2007). "The BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to law." *Id.* "Where, as here, the BIA provides its own reasoning for the denial, rather than summarily affirming the IJ, we review only the BIA's decision." *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015). "[U]nder the *Chenery* doctrine," we generally do "not uphold administrative action based on reasons different from those given by the agency." *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010); *see SEC v. Chenery Corp.*, 318 U.S. 80, 87, 95 (1943). Nevertheless, under binding precedent, a BIA "decision may be upheld on the basis of harmless error if [a] petitioner's prospects are otherwise so weak that there is no 'reason to believe that . . . remand might lead to a different result.'" *Japarkulova*, 615 F.3d at 701 (second alteration in original) (quoting *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005)).

## C. Merits

There is no question in this case that the Patels failed to receive actual notice—the mailings were returned without delivery. A.R. I at 1853 (Certified Mail Return); A.R. II at 402, 411

(Certified Mail Returns); *see also* Resp't's Br. at 13. But actual notice, in this context, is not required. Under governing law:

> With exceptions not relevant here, a hearing notice is sufficient if sent by certified mail to the most recent address provided by the alien. 8 U.S.C. § 1252b(a)(2), (c)(1). There is no requirement that the alien actually receive the notice before an Immigration Court can order the alien deported *in absentia*. *Arrieta v. INS*, 117 F.3d 429, 431 (9th Cir. 1997); *In re Grijalva*, 21 I. & N. Dec. 27, 33–34 (BIA 1995).

*Sanchez v. Holder*, 627 F.3d 226, 231 (6th Cir. 2010). All that is needed, rather, is "constructive receipt." *Id.* And "properly mailing the hearing notice according to the statute" is sufficient to satisfy this standard; it "creates a presumption that notice was received by the alien," while "[n]otice sent by *certified* mail creates a *strong* presumption of receipt." *Id.* (emphases added); *see also Ba v. Holder*, 561 F.3d 604, 606–07 (6th Cir. 2009).

Even evidence of nondelivery, meanwhile, is insufficient to justify relief if the reason for nondelivery is legally attributable to the alien. This principle follows from both pre- and post-IIRIRA law, which requires aliens in deportation proceedings to ensure that the Government knows their current address. 8 U.S.C. § 1252b(a)(1)(F); 8 U.S.C. § 1229(a)(1)(F). And these rules in turn encode what is essentially a forfeiture mechanism: "proceedings will not be reopened if the alien fails to receive a hearing notice because the alien's own conduct made him or her unreachable," and "[a]liens make themselves unreachable if they fail to notify the appropriate Immigration Court of changes to their address as required by 8 U.S.C. § 1252b(a)(1)(F)(ii)." *Sanchez*, 627 F.3d at 233; *see also* 8 U.S.C. § 1252b(a)(2). Thus, if the Patels had provided the

INS with an address that was not in fact their own, the simple fact that they did not actually receive notice would not entitle them to relief.

In this case, as discussed above, the BIA reasoned "that the postal service would determine that 4448 Moble Highway was intended to mean 4448 Mobile Highway," and then further stated that the Patels had "not provided any evidence establishing that [they were] actually residing at the Mobile Highway address or entitled to receive mail there." A.R. I at 1709–10 (Apr. 2017 BIA Decision); A.R. II at 6–7 (Apr. 2017 BIA Decision). But there is a potentially serious problem with this explanation: regardless of what assumptions the BIA could reasonably make about the Postal Service's actions—a question on which we express no view—the Patels did provide *some* evidence that they lived at the Mobile Highway address and were entitled to receive mail there at the time. First, they provided evidence (in the form of a luggage tag) that they intended to live at 4448 Mobile Highway in February 1997. A.R. I at 1839 (Luggage Tag). And second, as the BIA acknowledged for a different proposition, "the order[s] of deportation w[ere] *not* returned to the Immigration Court as undeliverable after [they were] mailed to the [Patels] at the Mobile Highway address" following the October and November 1997 hearings.[4] A.R. I at 1709 (Apr. 2017 BIA Decision at 1); A.R. II at 6 (Apr. 2017 BIA Decision at 1) (emphasis added). Thus, while the

---

[4]The BIA acknowledged these successful deliveries in late 1997 to support the conclusion that the Postal Service was able to deliver the mail to 4448 Mobile Highway despite the missing "i." *See* A.R. I at 1709 (Apr. 2017 BIA Decision at 1); A.R. II at 6 (Apr. 2017 BIA Decision at 1). But by making that inference without also reckoning with the later delivery's corresponding support for the Patels' claim that they lived at the Mobile Highway address in June and July 1997, the BIA appeared at least arguably to recognize the import of this evidence only when it worked against the Patels, without showing that it considered the extent to which that evidence also aided them.

Patels did not provide evidence directly proving that they lived at 4448 Mobile Highway in June and July 1997, they did provide evidence suggesting that they intended to live there a few months earlier and that they did in fact live there a few months later. Thus, if the BIA indeed concluded the Patels had "not provided *any* evidence establishing that [they were] actually residing at the Mobile Highway address or entitled to receive mail there," A.R. I at 1710 (Apr. 2017 BIA Decision) (emphasis added); A.R. II at 7 (Apr. 2017 BIA Decision) (emphasis added), we cannot say that this was a rational conclusion that would survive abuse-of-discretion review.

The BIA's reasoning, however, is not entirely clear. It may be, for example, that it weighed the dependability of the Postal Service against the Patels' evidence and found the former stronger. On the BIA's stated rationale, we cannot say—nor do we express a view at this stage on how such a weighing ought to come out. But because we are not convinced that the Patels' "prospects are otherwise so weak that there is no 'reason to believe that . . . remand might lead to a different result,'" *Japarkulova*, 615 F.3d at 701 (citation omitted) (alteration in original), "[t]his ambiguity requires us to remand . . . to the BIA for clarification," *Liming Zheng v. Holder*, 410 F. App'x 912, 917 (6th Cir. 2010). *See also Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010) ("When the BIA does not fully consider an issue, . . . 'the proper course, except in rare circumstances, is to remand to the [BIA] for additional investigation or explanation.'" (second alteration in original) (quoting *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006))).

## III.  CONCLUSION

Because we cannot tell from the BIA's opinion whether it in fact considered all of the evidence before it or instead ignored relevant evidence favoring the Patels, we **VACATE** the BIA's decision and **REMAND** this case to the BIA for further proceedings consistent with this opinion.