NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0643n.06

No. 17-4309

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARTIN SALDANA-NAVARRO, | ) | **FILED** |
| | ) | Dec 26, 2018 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MATTHEW G. WHITAKER, Acting Attorney | ) | BOARD OF IMMIGRATION |
| General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before: DONALD, LARSEN, and NALBANDIAN, Circuit Judges.

LARSEN, Circuit Judge. In 2009, an immigration judge (IJ) ordered Martin Saldana-Navarro, a native and citizen of Mexico, removed from the United States. Eight years later, Saldana-Navarro filed a motion to reopen, arguing that he was not properly served with a Notice to Appear (NTA) and did not receive notice of his hearing. The IJ denied Saldana-Navarro's motion, and the Board of Immigration Appeals (BIA) dismissed his appeal. Saldana-Navarro now petitions this court for review of the BIA's decision. We DENY the petition for review.

I.

Saldana-Navarro unlawfully entered the United States in February 2003. In August 2008, he was arrested in Davidson County, Tennessee, for driving without a license. The next day, an officer with the Department of Homeland Security (DHS) personally served Saldana-Navarro with an NTA directing him to appear before an IJ, at a date and time to be later determined. The NTA

specified that the hearing would be held in Oakdale, Louisiana. The officer warned Saldana-Navarro—in English—of the consequences of failing to appear. When arrested, Saldana-Navarro gave his address as 146 Circle Project, Carthage, Tennessee (the Carthage Address). When a friend later posted bond and procured Saldana-Navarro's release, the friend listed a different address for Saldana-Navarro, 403 S. Greenwood #A, Lebanon, Tennessee (the Lebanon Address).

DHS initiated removal proceedings against Saldana-Navarro in Memphis, Tennessee. The day he was released from custody, DHS mailed Saldana-Navarro a Notice of Change of Address for Immigration Court, notifying him of the change of venue from Louisiana to Tennessee. DHS mailed the notice only to the Lebanon Address. In October 2008, the Immigration Court mailed to the Lebanon Address a notice of hearing, scheduled for March 2009. Saldana-Navarro did not appear at the hearing. Recognizing the existence of the Carthage Address in the record, the IJ rescheduled the hearing for May 2009 and sent notices of the hearing to both the Carthage Address and the Lebanon Address. Saldana-Navarro did not appear at the May 2009 hearing, so the IJ proceeded in absentia, determined that there were grounds for removal, and ordered Saldana-Navarro removed.

Roughly eight years later, Saldana-Navarro filed a motion to reopen the removal proceedings. Saldana-Navarro filed an affidavit stating that he never received the hearing notices because he was not living at either the Carthage Address or the Lebanon Address when the notices were sent. He further claimed that he did not know of his obligation to keep his address current with the court because, even though he had received the NTA, he was unable to read or understand English and was not provided an explanation of the NTA's contents in Spanish, his native language.

The IJ denied Saldana-Navarro's motion to reopen. The IJ concluded that because DHS had personally served Saldana-Navarro with the NTA, Saldana-Navarro had sufficient notice of his obligation to update his address with the court and the consequences of his failure to appear. The IJ further concluded that Saldana-Navarro's failure to update his address relieved the court of any obligation to provide him with written notice of the hearing. The IJ also determined that DHS was not required to give oral warnings in Spanish of the consequences of failing to appear.

Saldana-Navarro appealed to the BIA. The BIA dismissed the appeal, concluding that the IJ had properly denied the motion to reopen because Saldana-Navarro had been personally served with the NTA and because the court was not required to provide him with written notice of the May hearing due to his failure to update his address.

## II.

Where, as here, "the BIA provides its own reasoning for denying a motion to reopen rather than summarily affirming the IJ, we review the BIA's decision as the final agency determination." *Sanchez v. Holder*, 627 F.3d 226, 230 (6th Cir. 2010). We review the BIA's decision for an abuse of discretion. *Id.* "The BIA abuses its discretion only when its determination was made 'without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Thompson v. Lynch*, 788 F.3d 638, 642 (6th Cir. 2015) (quoting *Camaj v. Holder*, 625 F.3d 988, 991 (6th Cir. 2010)).

*Notice to Appear.* Saldana-Navarro contends that when DHS personally served him with the NTA, DHS erred by not providing him oral notice of the NTA's content in his native language, Spanish. We find his arguments unconvincing.

First, we have previously recognized that "[t]he Immigration and Nationality Act (INA) . . . does not require that the NTA be explained or written in an alien's native language." *Patel v. Sessions*, No. 18-3123, 2018 WL 5291169, at *3 (6th Cir. Oct. 24, 2018). The INA's lone reference to an oral notice requirement for removal proceedings appears in 8 U.S.C. § 1229a(b)(7). That subsection provides:

> Any alien against whom a final order of removal is entered in absentia under this subsection and who, at the time of the notice described in paragraph (1) or (2) of section 1229(a) of this title, was provided oral notice, either in the alien's native language or in another language the alien understands, of the time and place of the proceedings and of the consequences under this paragraph of failing . . . to attend a proceeding under this section, shall not be eligible for relief under section 1229b, 1229c, 1255, 1258, or 1259 of this title for a period of 10 years after the date of the entry of the final order of removal.

This subsection "does not require oral warnings or suggest that the absence of such warnings justifies reopening a removal proceeding." *Patel*, 2018 WL 5291169, at *3. Instead, "this provision imposes an additional penalty—a ten-year bar to eligibility for certain forms of discretionary relief—when an alien has received oral notice in a language he understands but nevertheless fails to appear at the removal hearing and is then ordered removed in absentia." *Id.* The INA, therefore, provides no support for Saldana-Navarro's position.

Saldana-Navarro counters that "[i]t is unclear how Petitioner can be expected to understand the contents of the Notice to Appear or his obligation to keep the Court updated as to his address where the NTA is written in English and was never explained to him in Spanish." Yet, Saldana-Navarro was hand-served a notice to appear by a DHS agent shortly after having been arrested and taken into custody; surely he knew that some consequence was to follow. Under these circumstances, he could have been expected to inquire into the contents of the notice, even though its text was not in his native language. *See id.*; *see also Singh v. Holder*, 749 F.3d 622, 626 (7th Cir. 2014); *Ojeda-Calderon v. Holder*, 726 F.3d 669, 675 (5th Cir. 2013).

Last, Saldana-Navarro contends that the lack of oral notice in his native language violated a Memorandum of Agreement (MOA) between DHS and Davidson County, Tennessee, which required the sheriff's office, when enforcing federal immigration law on behalf of DHS, to "provide an opportunity for subjects with limited English language proficiency to request an interpreter." This argument fails both procedurally and on the merits. As to procedure, Saldana-Navarro did not raise this argument before the IJ; accordingly, the BIA rightfully declined to consider it. *See Precaj v. Holder*, 376 F. App'x 553, 559 (6th Cir. 2010). And on the merits, the MOA explicitly states that the interpreter policy does not "create[] any rights, substantive or procedural, enforceable at law by any person in any matter, civil or criminal." Saldana-Navarro suggests no reason why we should ignore this disclaimer. Saldana-Navarro's argument based on the MOA fails.[1]

*Notice of Hearings.* Saldana-Navarro argues that his failure to appear at his deportation hearing should be excused because he never received the hearing notices. He contends that the Immigration Court erred by sending the initial notices to the Lebanon Address, an address Saldana-Navarro claims his friend provided to the court, and by the time the court sent the notice to the Carthage Address—the address Saldana-Navarro provided—he no longer resided there. This argument fails because Saldana-Navarro bore the sole burden of informing the court of his changed address, yet he never did so.

---

[1] Saldana-Navarro also argues that he was not properly served with the NTA because the notice did not provide the proper time and place of the hearing. Saldana-Navarro, however, did not meaningfully raise this issue before the BIA, and the BIA did not address it. We, therefore, will not address the argument. *See Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) ("[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal."); *see also Arestov v. Holder*, 489 F. App'x 911, 919 (6th Cir. 2012) ("A properly raised claim before the BIA requires that an issue was not only mentioned but also that it was 'reasonably developed in the petitioner's brief to the BIA.'" (quoting *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009))).

This court has long held that deportation "proceedings will not be reopened if the alien fails to receive a hearing notice because the alien's own conduct made him or her unreachable." *Sanchez*, 627 F.3d at 233. "Aliens make themselves unreachable if they fail to notify the appropriate Immigration Court of changes to their address as required by 8 U.S.C. § 1252b(a)(1)(F)(ii)." *Id.*; *see also Mota-Roman v. Holder*, 331 F. App'x 379, 383 (6th Cir. 2009) ("In all events, the burden was on [Petitioner], and not the DHS, to provide written notice of his change of address to the Immigration court."). The NTA, which was properly served on Saldana-Navarro, informed him of his duty to update his address with the court and the consequences for not doing so. Saldana-Navarro admits that the court sent the notice of hearing to the address he himself provided—the Carthage Address. Because he never informed the court of his new address and therefore made himself unreachable, Saldana-Navarro cannot now complain that he never received the hearing notice sent to his old address. *See Sanchez*, 627 F.3d at 233–34.

\* \* \*

We DENY the petition for review.